**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 4, 2012

Lyle W. Cayce
Clerk

No. 11-41211

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TRAVIS HUNTER BLANK,

Defendant - Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Travis Hunter Blank ("Blank") appeals his convictions for transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1), and for possessing child pornography in violation of § 2252(a)(4)(B) and (b)(2). Blank asserts that (1) the district court abused its discretion when it dismissed the original indictment without prejudice for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174, (2) there is insufficient evidence to support the jury's guilty verdict, and (3) the district court abused its discretion by allowing the jury to view several images of child pornography. We AFFIRM.

No. 11-41211

I.

A video clip depicting child pornography sent from Blank's e-mail account triggered an investigation leading to the issuance of a warrant to search his home. At the time the officers executed the search warrant, Blank voluntarily spoke with Detective Jeff Rich. During this conversation, Blank admitted that he downloaded child pornography to his computer and that he sent the video clip depicting child pornography from his e-mail account. He further admitted that he had viewed child pornography for the past ten years. Blank then completed a written statement containing the following admission: "I have looked at child pornography for over the past 10 years through speaking to people on AOL in chatrooms. I don't keep any images. I look and delete. Youngest I've seen might be 10. Over 10 years, maybe I've seen 1,000 pictures."

Blank's computers were seized, and a forensic examination revealed a total of twenty-four images of child pornography, including one which established that the video clip sent from Blank's e-mail account was on his computer. While Blank was in custody awaiting trial, several of his phone calls to family members were recorded and were admitted into evidence at trial. In one call, Blank mused that if AOL software could detect the age of a person in a photograph sent through an e-mail, he "would have been caught 10 years ago, nine years ago, eight years ago, seven years ago." In other calls he stated that "I've done it before and its never been caught" and "I hate to say it, but I should have been caught a long time ago."

Approximately one month into his pretrial detention, Blank told one of his sisters that he had learned that an attorney had successfully defended a client in a child pornography case by having the defendant blame another individual who resided in the defendant's home. Shortly after this conversation, Blank told his other sister that an English teenager ("the teenager") who had lived

2

with Blank for approximately seven years[1] was responsible for the child pornography. Blank's theory at trial was that the teenager was responsible for the child pornography and that Blank's confessions to officers and family members were merely attempts to protect the teenager from deportation.[2]

On July 8, 2009, approximately one month after he had confessed to the crimes, Blank was charged in a two-count indictment with transporting and possessing child pornography. His trial was initially set for January 2010. In November and December 2009, Blank's counsel filed motions to withdraw, to continue the trial date, and to obtain a psychiatric examination for Blank. These motions were granted and, pursuant to Blank's request, his initial trial setting was vacated and a final pretrial conference was scheduled for May 10, 2010. After the district court found Blank competent to stand trial in March 2010, he filed a motion for release from custody because of health problems. On April 14, 2010, the day after Blank filed that motion, a magistrate judge ordered him released on condition of home detention

On May 5, 2010, Blank filed a motion to dismiss for violation of the Speedy Trial Act. The government responded within two days, agreeing that there was a violation, but urging that the dismissal be without prejudice. On May 10, 2010, the court held a second pretrial conference and took Blank's motion to dismiss under advisement. Almost ten months later, on March 3, 2011, the district court dismissed the indictment without prejudice, explaining in part:

> Given the seriousness of the charged offenses; the facts and

---

[1] The teenager, originally from England, lived with Blank (who was a hockey coach and referee) so that he could develop his hockey skills. The teenager lived with Blank from approximately 2002 until 2009.

[2] It is undisputed that the teenager returned to England closely following the execution of the search warrant at Blank's home. The teenager was no longer in the country when Blank was arrested a few weeks later. All confessions Blank made to his family members occurred after the teenager had returned to England.

> circumstances which led to this dismissal; the fact that a dismissal with prejudice would neither serve as a deterrent to the Government or the court nor serve the public interest in bringing the accused to trial; and the fact that there has been no prejudice to the Defendant for which the Government is responsible in connection with this Speedy Trial Act violation, the court declines to dismiss this case with prejudice.
>
> The court acknowledges the ten month delay in ruling on this motion to dismiss.  That is certainly not the fault of the Government, but rather is due to the fact that the court did not attend to this matter as quickly as the court should have attended to it.

A week later, on March 10, 2011, Blank was charged in a two-count indictment based on the same underlying conduct as in the first indictment.  Blank filed a motion to dismiss this indictment, alleging a violation of the Speedy Trial Act and arguing that the "clock" continued to tick and was not reset by the filing of the second indictment.  The district court denied the motion.  On June 20, 2011, Blank's jury trial commenced, at the end of which the jury returned a guilty verdict on both counts.  Blank was sentenced to 121 months' imprisonment on count one and 120 months' imprisonment on count two, to be served concurrently.  This appeal followed.

## II.

Blank first challenges the district court's decision to dismiss the first indictment without prejudice.[3]  Both parties agree that the district court correctly dismissed the first indictment, but dispute whether the court erred in dismissing *without* prejudice, which ultimately allowed for a successful reprosecution.

---

[3] Blank has not alleged a violation of his Sixth Amendment right to a speedy trial. Accordingly, we hold that Blank has waived any potential Sixth Amendment violation that might have existed on these facts. *See United States v. Molina-Solorio*, 577 F.3d 300, 304 n.2 (explaining that a "claim under the Speedy Trial Act differs in some significant ways from a claim under the Sixth Amendment speedy trial clause" (quoting *United States v. Frye*, 372 F.3d 729, 734 (5th Cir. 2004)).

"[T]he decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal." *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987) (internal quotations omitted). Accordingly, we review a district court's decision to dismiss an indictment without prejudice for noncompliance with the Speedy Trial Act for an abuse of discretion. *United States v. Blevins*, 142 F.3d 223, 225 (5th Cir. 1998) (citing *United States v. Taylor*, 487 U.S. 326, 342–43 (1988)).

A district court considering whether to dismiss with or without prejudice must address each of the following factors: (1) the seriousness of the offense; (2) the facts and circumstances which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *See* 18 U.S.C. § 3162(a)(2).

## A.

Blank does not challenge the district court's conclusion that possessing and transmitting child pornography are serious offenses. He argues, however, that even though the charged crimes are serious, the "low" number of images of child pornography discovered on his computer demonstrates that "he does not fit the general profile of a child pornographer and his alleged violations are not as serious as other alleged child pornography offenders." We disagree. Twenty-four images of child pornography is not such a low number as to mitigate the seriousness of the offense. Moreover, Blank's voluntary admission that he had viewed more than 1000 images over the previous decade highlights the seriousness of his conduct.

## B.

The second factor requires consideration of the facts and circumstances leading to dismissal. Normally, this factor concerns the government's reason for violating the Speedy Trial Act, and, accordingly, the burden is on the

government to explain the violation. *See, e.g.*, *United States v. Mancia-Perez*, 331 F.3d 464, 468 (5th Cir. 2003); *Blevins*, 142 F.3d at 226 ("Regarding the facts and circumstances leading to the dismissal, we look to whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant."). In this case, Blank concedes that the government did not contribute to the violation of the Speedy Trial Act and that the significant delay did not allow the government to gain a strategic or tactical advantage in the prosecution of his case. Rather, the parties agree that the sole cause for the delay was the district court's overcrowded docket. This conclusion, however, does not end the inquiry.

Delay attributable to the trial court, just as delay attributable to the government, weighs in favor of dismissal with prejudice. *See United States v. Peeples*, 811 F.2d 849, 851 (5th Cir. 1987) (explaining that "[i]f the prosecutor or the district court were entirely at fault for the delay[,]" the defendant's arguments for dismissal with prejudice would be viewed more favorably); *see also United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) ("When a [Speedy Trial Act] violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal with prejudice."); *United States v. Stayton*, 791 F.2d 17, 19–20 (2d Cir. 1986) ("The Speedy Trial Act was designed to effectuate the interests of society in general and of the defendant in particular by ensuring that our courts mete out speedy justice. The prosecutor, defense counsel, and the court each plays a role in insuring that the interests of the public and the defendant in a speedy trial are protected." (internal citation omitted)). As the Supreme Court has explained, delay attributable to a "neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

6

*Barker v. Wingo*, 407 U.S. 514, 531 (1972); *see id.* (contrasting these "neutral reasons" with (1) deliberate attempts to delay a trial in order to disadvantage the defendant, which should be weighed heavily against the government, and (2) "valid reasons," such as a missing witness, that justify delay).

Here, the parties, as well as the district court, agree that the sole cause for the violation of the Speedy Trial Act was that court's overcrowded docket.[4] Although this is a "neutral reason," it weighs in favor of dismissal with prejudice.

## C.

The final factor that must be considered—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice—encompasses three concerns: (1) the defendant's right to a timely trial; (2) the potential deterrent effect of a prejudicial dismissal on repeated violations of the Speedy Trial Act; and (3) the public's interest in bringing the defendant to trial. *See Mancia-Perez*, 331 F.3d at 469. Courts must also consider the presence or absence of prejudice to the defendant caused by the violation. *Id.* (citing *Taylor*, 487 U.S. at 334).

As to the first concern, there is no question that Blank did not receive a timely trial. As to the second concern, the government argues that there would be no deterrent effect of a prejudicial dismissal in this case because the district court acknowledged that the delay was solely attributable to its caseload. We disagree. As the parties acknowledged at oral argument, criminal trials in the

---

[4] The district court inexplicably took almost ten months to issue a brief four-page order ruling on the largely undisputed motion to dismiss. By the time the district court issued its ruling on March 3, 2011, the total delay was 457 days beyond the limit imposed by the Speedy Trial Act. In contrast to the delay prior to the motion to dismiss, which was at least partly attributable to Blank's pretrial motions that required rescheduling of the initial trial date, the district court's overcrowded docket does not excuse a ten-month delay to issue a brief ruling in a criminal case. We are not blind to the burdens faced by the district court in managing an overcrowded docket. As the court noted in its order, it must juggle a significant number of criminal and civil cases. Although delays attributable to an overcrowded docket are understandable, however, they do not excuse or minimize violations of the Speedy Trial Act.

Sherman Division are routinely scheduled beyond the time limits of the Speedy Trial Act. Accordingly, our requiring a prejudicial dismissal in this case would send a stronger message to the district court that it must comply with the requirements of the Speedy Trial Act.[5] *See United States v. Johnson*, 29 F.3d 940, 946 (5th Cir. 1994) ("Weighing in favor of dismissal with prejudice, we note that the [Speedy Trial] Act was designed to protect a defendant's right to a timely trial, and dismissal with prejudice is more likely to cause the government and the courts diligently to comply with the Act's requirements."); *see also United States v. Caparella*, 716 F.2d 976, 981 (2d Cir. 1983).[6] The third concern, as noted above, weighs in favor of dismissal without prejudice because the public has a great interest in bringing to trial defendants who have been accused of committing serious crimes. *See Johnson*, 29 F.3d at 946.

Finally, we consider whether the violation prejudiced Blank. The Supreme Court has explained:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker*, 407 U.S. at 532.

We consider the most serious type of prejudice, *i.e.*, the possibility that

---

[5] We disagree with the district court's statement that "a dismissal with prejudice is not more likely to cause this court to comply with the Act."

[6] Prejudicial dismissal in this case might encourage the government to go beyond that which it is *required* to do and take appropriate actions to encourage a district court to schedule criminal trials within the Speedy Trial Act's limits and to rule timely on outstanding motions implicating speedy trial concerns. *See Ramirez*, 973 F.2d at 39 ("Even though a prosecutor does not bear the burden of monitoring the court's compliance with the [Speedy Trial Act] in absence of an announced rule, district courts do look to prosecutors for assistance as officers of the court.").

Blank's defense was impaired by the substantial delay experienced in this case. Although Blank claims in his reply brief[7] that three witnesses suffered from memory loss by the time of his trial, he has failed to demonstrate how the lapses in memory harmed his defense. Even if the witnesses had testified as fully as Blank had wished, that testimony would not have cast doubt on the veracity of his confessions. Blank's other claims of prejudice are also unavailing because he has failed to establish a link between his job loss and medical conditions and the violation of the Speedy Trial Act.[8]

## D.

After conducting this substantive review of the district court's decision to permit reprosecution, we are satisfied that the court did not err in dismissing the indictment without prejudice. Although this might have been a close case in the district court, we cannot say that the district court abused its discretion in dismissing the indictment without prejudice, particularly given the seriousness of the offenses at issue, the absence of any prosecutorial gamesmanship or governmental cause of the delay, or any material evidence of prejudice to Blank's defense.

## III.

Blank next challenges the sufficiency of the evidence to uphold his convictions. Because Blank properly preserved this argument, our review is de novo. *United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007). "In deciding

---

[7] This court generally will not consider an issue raised for the first time in a reply brief. *See, e.g.*, *United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010). Nevertheless, given the significant delay in this case, we address this contention to ensure that any potential prejudice to Blank's defense is considered.

[8] The record indicates that Blank was no longer employed at the time he was first arrested—accordingly, the violation had no impact on his loss of employment. The record also is clear that Blank was released from pretrial detention one day after he filed a motion for release—which was a few weeks *before* he asserted his right to a speedy trial—so that he would be able "to access his private physicians and hospitals in order [to] have a more thorough diagnosis and treatment regimen."

whether the evidence was sufficient, we review all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id.*

Blank does not contend that the evidence was insufficient to establish any essential element of the offenses charged—rather, he claims only that the evidence presented "gives equal circumstantial support to the possibility" that the teenager was responsible for the child pornography, and that the jury could not reasonably exclude this alternative theory without speculation. Blank relies on this court's decision in *United States v. Moreland*, 665 F.3d 137 (5th Cir. 2001). In *Moreland*, this court explained that "[w]hen the government seeks to prove constructive possession of contraband found in a jointly occupied location, it must present additional evidence of the defendant's knowing dominion or control of the contraband, besides the mere joint occupancy of the premises, in order to prove the defendant's constructive possession." *Id.* at 150.

At trial, Blank's theory of the case was that the teenager, who also used the computer on which images of child pornography were found, was responsible for the images. This ignores the overwhelming contrary evidence offered by the government at trial. Specifically, in oral and written statements to Detective Rich, Blank had admitted that he was guilty of the charged offenses and that he had been viewing child pornography for years. Blank had made similar admissions to several family members while he was incarcerated awaiting trial. Although Blank testified at trial that he had been lying to the police and family to protect the teenager, the jury could properly choose which of Blank's renditions of the facts was more credible.[9] Viewed in the light most

---

[9] Moreover, given the totality of the evidence offered at trial, it is unlikely that *any* rational trier of fact would have found Blank's attempt to pin the crime on the teenager credible. As an example of the many inconsistencies in Blank's theory, Blank continued to admit to the offenses well after the teenager had returned to England and deportation was no

favorable to the verdict, the evidence is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Blank possessed and transported child pornography.

IV.

Blank's final contention is that the district court abused its discretion by admitting two exhibits[10] of child pornography after Blank offered to stipulate that the material was child pornography. That claim is foreclosed by this court's decision in *United States v. Caldwell*, 586 F.3d 338 (5th Cir. 2009).[11]   In *Caldwell*, we explained that "child pornography is graphic evidence that has force beyond simple linear schemes of reasoning. It comes together with the remaining evidence to form a narrative to gain momentum to support jurors' inferences regarding the defendant's guilt." *Id.* at 343. Accordingly, we found that this type of evidence falls under the general rule described by the Supreme Court in *Old Chief v. United States*, 519 U.S. 172 (1997), *i.e.*, that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away . . . ."[12] 519 U.S. at 189. We conclude that the

---

longer a concern. Also, instead of merely admitting that he sent the e-mail and that any images on the computer were his, Blank admitted to ten years of viewing over a thousand images of child pornography. This admission is inconsistent with a desire merely to protect the teenager, who had been living with Blank for only six years.

[10] The jury was shown one video and five images of child pornography out of the twenty-four images found on Blank's computer.

[11] Blank's attempt to distinguish *Caldwell* is unavailing. It is true that Blank's proffered stipulation was broader than the stipulation at issue in *Caldwell* because Blank also offered to stipulate that anyone viewing the images would immediately know that they contained child pornography. This distinction, however, was not central to the court's reasoning in *Caldwell* and thus fails to provide support for Blank's argument. *See Caldwell*, 586 F.3d at 343.

[12] The Supreme Court in *Old Chief* determined that the district court had abused its discretion in admitting the defendant's record of conviction rather than allowing a stipulation to convict status. 519 U.S. at 191–92. The Court distinguished that case from others, like this one, in which the prosecutor seeks to offer evidence concerning the instant offense for which the defendant is being tried. *See id.*

No. 11-41211

district court did not abuse its discretion by admitting the images of child pornography discovered on Blank's computer, which he was charged with possessing and transporting.

AFFIRMED.