**REVISED JUNE 16, 2014**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30090

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SHONDOLYN ROCHELLE BLEVINS,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before JOLLY, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Shondolyn Rochelle Blevins was convicted by a jury for possession of cocaine with intent to distribute, possession of a weapon in furtherance of a drug trafficking crime, and being a felon in possession of a firearm. Blevins appeals her conviction on all three counts. We AFFIRM. On a sentencing issue, we VACATE and REMAND for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On August 24, 2010, an unidentified resident of Ouachita Parish, Louisiana made a complaint about Blevins to the Louisiana State Police. State Police Officer Chris Hollingsworth responded to the complaint and learned that Blevins was reputed to sell crack cocaine. Based on this information,

No. 13-30090

Hollingsworth decided to recruit a confidential informant ("CI") to investigate whether Blevins was illegally selling drugs. The CI and Hollingsworth conducted five controlled crack purchases from Blevins.

The purchases, with one exception,[1] were conducted in the following manner. Hollingsworth wired the CI with an electronic monitoring device and searched the CI for contraband. On their way to meet Blevins, Hollingsworth and the CI stopped at a local convenience store so that the CI could buy candy and soft drinks to offer Blevins as a "peace offering." Hollingsworth then dropped off the CI a few blocks from the place where the transaction was to occur, while other officers conducted rolling surveillance. Hollingsworth parked his vehicle in a nearby parking lot, watched the CI enter the residence, and listened to an audio transmission of the transaction. Immediately following the purchase, the CI returned to Hollingsworth and produced a rock-sized quantity of crack cocaine.

Following these transactions, Hollingsworth obtained an arrest warrant from a Ouachita Parish judge on October 7, 2010. Seven police officers executed the arrest warrant five days later. The officers approached Blevins' trailer at 7:15 a.m., knocked loudly on the door, and announced themselves as "State Police." Blevins opened the trailer's door but immediately retreated to the back of the trailer without closing the door. Hollingsworth entered the trailer, ordered Blevins to get on the floor, and handcuffed her. The other officers performed a security sweep of the house.

As the officers were performing the security sweep, Hollingsworth asked Blevins if she had drugs in her trailer, to which she responded that there is "crack hidden all over this house." Hollingsworth allowed Blevins to put on

---

[1] Typically, the CI met Blevins at the same designated area; once Blevins insisted that the CI follow her home to make the purchase.

No. 13-30090

more clothes and asked for permission to search the trailer. He also asked Blevins to sign a consent-to-search form. Blevins responded, "Well, I'm not going to sign the form but you can search and look wherever you want." The officers conducted a ten-minute search which revealed the following items, most of which had been noticed by the officers during the security sweep: a loaded Lorcin .380 caliber pistol on the floor near Blevins, a rock of crack cocaine on the kitchen stove, an open pill bottle containing more than one hundred rocks of crack cocaine, a few bags of marijuana and a partially burned marijuana cigar, and a loaded magazine with over five rounds of ammunition. The officers also opened a heart-shaped box lying near the pill bottle, which contained more rocks of crack cocaine.

The officers arrested Blevins and transported her to a nearby Louisiana State Police field office. There, Hollingsworth reviewed a written advice-of-rights form with Blevins, portions of which Blevins initialed as she understood them. Blevins then gave a detailed statement admitting that she had acquired the crack cocaine from a local woman so that she could sell it to support herself. She further admitted that she purchased the Lorcin pistol for safety.

Blevins was indicted on January 26, 2011, for three criminal violations: Count One for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a) & (b)(1)(B); Count Two for possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and Count Three for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). She was arraigned on February 1 and was appointed her first attorney soon thereafter.

Blevins filed her first motion to suppress the evidence obtained during the execution of the arrest warrant on March 18. The magistrate judge held an evidentiary hearing. In May, the magistrate judge issued a report and recommendation, finding that the motion to suppress should be granted as to

No. 13-30090

Blevins' statement that crack was "hidden all over [the] house" because Hollingsworth failed to produce testimony that he had properly issued *Miranda* warnings to Blevins. The magistrate recommended that the motion otherwise should be denied. The district court agreed in all respects.

Shortly thereafter, Blevins filed a *pro se* motion to dismiss her counsel. The court granted this motion on August 9 and appointed Blevins a second attorney. At the pretrial conference on August 16, Blevins' new counsel requested a continuance. Blevins needed more time, she argued, to file another motion to suppress. The court granted the motion "in the interests of justice" and set a deadline for the new motion to suppress to be filed.

Blevins filed the new motion to suppress on October 6. After a second evidentiary hearing, the magistrate judge recommended denial of the motion. After Blevins filed her objections but before the district judge ruled on the motion, Blevins moved to remove her second counsel. The motion was granted, and she proceeded without counsel from that time.

On January 25, 2012, the district judge adopted the recommendation to deny the motion to suppress. The court later *sua sponte* set the trial for May 14. Four days before her trial, Blevins filed a motion to dismiss the indictment for a violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), and the Sixth Amendment. The Government initially responded that no violation had occurred, or if it had, the court should dismiss the indictment without prejudice. The court held a hearing on the motion the morning of the scheduled trial and denied it.

Later that day, however, the Government stated that it had conducted further research and now believed the court should reconsider and dismiss the indictment without prejudice. After another hearing, the district court dismissed the indictment without prejudice.

No. 13-30090

On May 18, 2012, Blevins was again indicted on the same three counts. Proceeding without counsel, Blevins filed a third motion to suppress and second motion to dismiss. These motions generally advanced the same arguments as before. The district court denied Blevins' motion to dismiss without a hearing, and it denied the motion to suppress upon the recommendation of the magistrate judge.

After a jury trial on August 29, 2012, Blevins was found guilty on all three counts. She was sentenced to 120 months imprisonment on Count One, 60 months on Count Two, and 110 months on Count Three, with Counts One and Three to be served concurrently.

Blevins raises four issues on appeal: (I) Whether the district court abused its discretion in denying her motion to dismiss the second indictment; (II) Whether the district court erred in failing to dismiss Count Two because the indictment was either duplicitous or because it failed to state an offense; (III) Whether the district court erred in finding that the Government complied with the notice provision of 21 U.S.C. § 851; and (IV) Whether the district court erred in denying her motions to suppress.

DISCUSSION

I.    *Motion to dismiss the second indictment with prejudice*

"[T]he decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal." *United States v. Blank*, 701 F.3d 1084, 1088 (5th Cir. 2012) (quoting *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987)).

Three factors are relevant to whether a dismissal of an indictment for a Speedy Trial Act violation should be with or without prejudice: "the seriousness of the offense; the facts and circumstances of the case which led to

No. 13-30090

the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(1). The third factor incorporates the following concerns: "(1) the defendant's right to a timely trial; (2) the potential deterrent effect of a prejudicial dismissal on repeated violations of the Speedy Trial Act; and (3) the public's interest in bringing the defendant to trial." *Blank*, 701 F.3d at 1090.

Blevins concedes the seriousness of her offenses but contends the remaining two factors weigh in favor of dismissal with prejudice. Blevins argues that the court should dismiss the second indictment with prejudice to deter any future violations caused by the district court's overcrowded docket.[2] *See id.*; *see also United States v. Johnson*, 29 F.3d 940, 946 (5th Cir. 1994). The Government responds that the district court's sanction was commensurate with the nature of the violation and notes that Blevins has not provided a reason why deterrence is necessary here.

"Delay attributable to the trial court, just as delay attributable to the government, weighs in favor of dismissal with prejudice." *Blank*, 701 F.3d at 1089. Further, dismissal with prejudice can be a useful deterrent when violations recur within a particular court or jurisdiction. *Id.* at 1090. Generally, however, delay attributable to overcrowded dockets is merely a "neutral reason" that "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker v. Wingo*, 407 U.S. 514, 531 (1972). An isolated delay caused by an overcrowded docket is not a strong enough consideration to warrant dismissal with prejudice,

---

[2] Blevins also faults the court for its decision to continue the case indefinitely while the motion to suppress was pending. The continuance was not indefinite; the case was continued until the motion to suppress – which Blevins filed – could be ruled upon.

particularly in the face of other more weighty considerations. *Blank*, 701 F.3d at 1090-91.

Here, there is no evidence that Speedy Trial Act violations attributable to overcrowded dockets are a common occurrence in the Western District of Louisiana, the district where Blevins was tried.   Any delay caused by the court's scheduling difficulties weighs only slightly in favor of dismissal with prejudice. *Barker*, 407 U.S. at 531.  All other evidence supports the district court's decision to dismiss the indictment without prejudice.  Blevins does not attempt to rebut the district court's findings that her multiple pretrial motions, including her decision to dismiss her attorney not once but twice, were mostly responsible for the delay.   Further, she does not challenge the court's conclusion that she did not suffer actual prejudice because of the delay.  The district court did not abuse its discretion in dismissing the first indictment without prejudice and therefore properly denied Blevins' motion to dismiss the second indictment. *See Blank*, 701 F.3d at 1091.

## II.    *Motion to dismiss Count Two because the indictment was either duplicitous or because it failed to state an offense*

Blevins argues that Count Two was either duplicitous or failed to state an offense under 18 U.S.C. § 924.  Blevins admits that she failed to challenge the indictment on either basis at trial and thus our review is for plain error. "Objections to the indictment, such as objections on the basis of duplicity, must be raised prior to trial." *United States v. Creech*, 408 F.3d 264, 270 (5th Cir. 2005).  We limit our review, which is for plain error, to whether the indictment sufficiently charged Blevins with an offense under Section 924. *See United States v. Partida*, 385 F.3d 546, 554 (5th Cir. 2004).

"An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with

No. 13-30090

particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Cooper*, 714 F.3d 873, 877 (5th Cir. 2013) (quotations marks and citations omitted). Count Two of the indictment charged Blevins with a violation of 18 U.S.C. § 924(c)(1)(A). The statute describes separate though related offenses: (1) using or carrying a firearm during and in relation to a drug trafficking crime (the "use" offense) or (2) possessing a firearm in furtherance of a drug trafficking crime (the "possession" offense). *United States v. McGilberry*, 480 F.3d 326, 329 (5th Cir. 2007). The "use" offense occurs "when [a firearm] is actively employed during a drug crime;" the "possession" offense occurs "when [a firearm] furthers or advances the drug trafficking offense." *Id.* at 330.

Count Two charged Blevins with the following offense under the caption "Possession of a Firearm in Furtherance of Drug Trafficking":

> On or about October 12, 2010, in the Western District of Louisiana, the defendant, SHONDOLYN ROCHELLE BLEVINS, *during and in relation to drug trafficking crimes* for which she may be prosecuted in a court of the United States, that is, the charges set forth in Count 1, and *in furtherance of said drug trafficking crimes*, *did possess a firearm*, namely: a Lorcin, Model L380, .380 semi-automatic pistol and ammunition. (emphasis added).

Blevins is correct that the phrase "during and in relation to" should have accompanied the "use" offense, but the rest of that offense was not included in the charge, whereas the possession offense was completely charged. She relies on the inclusion of the extraneous phrase to suggest the indictment charged her with violating both parts of the statute, making the indictment duplicitous. Because she has waived this argument, we construe her insufficiency argument to assert that the inclusion of this additional language failed to clearly charge her with a violation of either offense.

In a recent decision, we reviewed an indictment that charged a defendant with "knowingly possess[ing] a firearm . . . during and in relation to a drug

trafficking crime." *Cooper*, 714 F.3d at 877.  There, similar to here, the charge for the possession offense was captioned: "Possess[ing] a Firearm *in Furtherance of* a Drug Trafficking Crime."  *Id.*  Noting that the purpose of an indictment is to put the defendant on notice of the charges against him, the court held that the clarity of the charge's caption cured any ambiguity that may have been created by the imprecise wording.  *Id.*

Here, unlike in *Cooper*, the indictment included the entire language of Section 924(c)(1)(A)'s possession offense, stating that Blevins "in furtherance of said drug trafficking crimes, did possess a firearm."  The inclusion of the entire phrase in the indictment's text gave the charge a greater level of clarity than that of *Cooper*.  Also as in *Cooper*, the indictment was correctly captioned with the phrase, "Possession of a Firearm in Furtherance of Drug Trafficking," and this caption matched the underlying conduct described in the charge.  The fact that the indictment also stated that Blevins' illicit conduct occurred "during and in relation to drug trafficking crimes," particularly without accompanying the "use or carrying" language, was, at most, a technical defect that did not obscure which offense was being charged.  *Id.*  Any ambiguity created by Count Two's inclusion of the superfluous language was cured by the charge's caption.  *Id.*

### III.     *Government's compliance with notice provision of 21 U.S.C. § 851(a)*

If a defendant has a prior conviction for a felony drug offense that the Government wishes to use to enhance the sentence resulting from a new conviction for a felony drug offense, the Government must give notice of that intent prior to a trial or to a plea of guilty.  21 U.S.C. § 851(a)(1).  The statute labels the notice an "information."  *Id.*  Blevins objected at her sentencing hearing that the Government had not properly served an information on her, and therefore no enhancement was permitted.  The district court held the

No. 13-30090

enhancement was appropriate, and Blevins renews her arguments here. We review preserved objections to compliance with this notice requirement *de novo*. *United States v. Rios-Espinoza*, 591 F.3d 758, 760 (5th Cir. 2009).

This statute requires filing of the information and service on the accused:

(a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

21 U.S.C. § 851. There is no question the Government gave proper notice under the first indictment. The information was filed on April 30, 2012, and served on defense counsel. Trial was to be in early May, but as we have discussed, the first indictment was dismissed. A second information was filed on August 29, the morning trial began under the second indictment, but it is disputed whether it was served on Blevins.

One issue, then, is factual – was there service on the accused? The other is legal – must there be a new filing and new service on a second indictment that duplicated an earlier indictment for which Section 851(a) notice was given? Notice "is to allow the defendant to contest the accuracy of the information" and also "to have ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *United States v. Arnold*, 467 F.3d 880, 887 (5th

10

No. 13-30090

Cir. 2006). The district court held, correctly according to the Government, that Blevins was informed by the first notice and a second one was unnecessary.

We first examine the factual issues. The Government filed and served the proper information on the first indictment, which as we have discussed, was dismissed. It then electronically filed an identical information with the court clerk on the morning the second trial began. The certificate of service indicates that a copy would be hand-delivered to Blevins.

Blevins did not object to the absence of the notice in her October 30 written objections to the pre-sentence report, though she did argue the relevant enhancement constituted "double counting" of the conviction. At the sentencing hearing on December 3, where she was representing herself with standby counsel, Blevins orally objected that she had not been served before the August trial with the Section 851(a) information. The Assistant United States Attorney assured the court that Blevins was personally served on the morning that trial began. The trial court at that time said it would "accept [the AUSA's] word that she did in fact" give Blevins a copy on the morning that trial began. Later in the hearing, though, the district court decided to take more evidence at a second sentencing hearing on January 7, 2013. Because Blevins denied getting the notice before her trial, the court wanted the Government to have a chance to respond to that denial with witnesses. The factual issue was thus open at the time of the second hearing.

At the second sentencing hearing, the district court did not make any oral finding on this question. The next day, the district court gave written reasons for denying Blevins' objections. The written reasons noted that the prosecutor said the information had been given Blevins the morning of trial, but Blevins denied being given the document. The district court did not resolve the factual question. Instead, the court determined that Blevins' actual

11

No. 13-30090

knowledge dating from the time of the first indictment and the absence of proper objections meant that the enhancement could be applied:

> Under these facts, it is clear that Defendant knew as far back as 2011 that the Government intended to seek a statutory enhancement of her sentence, but she never provided written notice that she intended to contest the conviction. Further, even now, Defendant does not deny that she had the 1994 conviction.

Had the district court found the notice was actually given to Blevins prior to her trial on the second indictment, we could review that finding based on the evidence in the record. Because there was no such finding, we will examine the legal conclusion on which the denial of Blevins' objection rests, namely, that the information properly filed and served on the first indictment sufficed. The Government defends the legal conclusion by citing caselaw from other circuits. One circuit held that when a second trial was held on the original indictment after an initial conviction had been reversed on appeal, there was no need to file and serve the Section 851(a) information again. *United States v. Mayfield*, 418 F.3d 1017, 1021 (9th Cir. 2005). Similarly, another circuit held that the Section 851(a) information filed before the first trial sufficed even though that conviction was reversed on appeal; a second trial ended in a mistrial; it was only after a third trial that the defendant's sentencing took place. *United States v. Williams*, 59 F.3d 1180, 1185-86 (11th Cir. 1995).

In both of these decisions, the original indictment remained operative for each trial. Closer to our situation is a third decision in which a Section 851(a) information, properly filed and served, was sufficient to allow the sentencing enhancement after conviction on a superseding indictment. *United States v. Kamerud*, 326 F.3d 1008, 1014 (8th Cir. 2003). We once defined "supersede" as "annul, make void, or repeal by taking the place of," and then observed that "[c]riminal courts follow such a meaning with respect to superseding indictments. . . ." *Olander v. Compass Bank*, 363 F.3d 560, 566 (5th Cir. 2004)

12

(the definition is from BLACK'S LAW DICTIONARY 1452 (7th ed. 1999)).  One explanation of "superseding indictment" is that it means "a second indictment issued in the absence of a dismissal of the first."  *United States v. Rojas-Contreras*, 474 U.S. 231, 237 (1985) (Blackmun, J., concurring).  Because the indictment in the current case was dismissed, *Kamerud, Mayfield*, and *Williams* are meaningfully distinguishable.

Our different question is whether the dismissal of one indictment and the bringing of a new one requires the filing and service of a new Section 851(a) information.  The issue of whether a second information is needed was at least sufficiently open that the Government filed and may have served one.  The issue is one of statutory interpretation.

To repeat for emphasis, Section 851(a)(1) relevantly states:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

Blevins is certainly someone who "stands convicted of an offense," but the question is whether the prosecution "before trial . . . file[d] an information . . . and serve[d] a copy" on her.

As we noted already, the defendant is to be notified of the potential enhancement arising from the prior conviction in time to assess "whether to enter a plea or go to trial and plan [her] trial strategy with full knowledge of the consequences of a potential guilty verdict."  *Arnold*, 467 F.3d at 887.  It might be argued as a factual matter, but Blevins does not do so, that even though a defendant knew the enhancement would be sought under a prior indictment, the dismissal of that indictment and the bringing of a new one can leave the defendant uncertain whether the prosecution would again seek the

enhancement.  We see no error in the district court's fact finding that Blevins was aware before trial that the enhancement would be sought.  At the sentencing hearing, Section 851(b) provides that the district court will ask the defendant if she accepts or disputes the conviction that is described in the Section 851(a) notice.  Blevins refused to do either, relying on the Fifth Amendment and suggesting that answering the district court's questions that Section 851(b) says are to be asked would be incriminating.

Nothing in the language of Section 851(a) mandates that the information setting out the Government's desire to use a prior conviction must be given immediately before trial.  Here, the information was filed and served on April 30, 2012, shortly before the trial was to be held on the first indictment; trial was finally held on the second indictment on August 29.  As noted, Blevins does not dispute that she was aware that the enhancement would be sought.  Consequently, we agree with the district court that the purposes of the Section 851(a) information were largely fulfilled.  But that is not enough.

The deficiency here arises from the fact that the dismissal of one indictment due to a speedy trial violation and the issuing of a new one by the grand jury causes a new criminal prosecution.  That point is intuitively correct, and courts have specifically said as much when the dismissal of one indictment is for a violation of the Speedy Trial Act.  One example is from this court: "Although not as harsh a sanction as dismissal with prejudice, dismissal without prejudice is meaningful because it, *inter alia*, forces the Government to obtain a new indictment if it decides to reprosecute as well as exposes the prosecution to dismissal on statute of limitations grounds." *United States v. Michael Dee Blevins*, 142 F.3d 223, 225 (5th Cir. 1998).

Thus, the trial that led to Blevins' conviction was a new prosecution, one independent of the first case in which the proper Section 851(a) information was filed and served.  The new prosecution is the one for which, "before trial,

or before entry of a plea of guilty," the Government is to file the information and serve it on the defendant or counsel. 21 U.S.C. § 851(a)(1).

The best reading of this language is that the notice must be given during the prosecution in which the sentencing occurs. The statutory language would be read too loosely were we to hold that notice given in a prior prosecution on an identical indictment satisfies the requirement that it be given "before trial" in a second prosecution. An absolute rule allowing incorporation of notices given in prior prosecutions would ignore variables such as how much time had elapsed since the first prosecution, or whether the defendant clearly was or should have been aware the enhancement was still being sought. If, instead, various factors were to be considered, that would create uncertainty hardly contemplated by the simple statutory text. The formal requirements of filing and service of the information are easily satisfied, and those steps may have been satisfied here. Section 851(a) is insistent: "*No person* who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, *unless* before trial" the proper filing and service of notice occurs. *Id.* (emphasis added).[3] A court's role does not include stretching tight statutory wording.

No explicit authority on this legal issue existed at the time of the district court's decision. That decision was reasonable but did not give sufficient weight to the fact that the second indictment commenced a second prosecution. We do not reject the caselaw from other circuits that the district court cited, all of which allowed one Section 851(a) notice to suffice for successive trials on the same indictment after a mistrial or a reversal on appeal, or for a trial on a superseding indictment. Those decisions are simply inapplicable.

---

[3] Evidence that the second indictment started a second prosecution is that the district court records reflecting this prosecution start with the second indictment; there is no clerk's entry there for filing the first indictment's Section 851(a) notice.

The district court erred in holding that it did not matter whether Blevins was served on the morning of trial with the second Section 851(a) notice. It does matter. Evidence was presented on the question, but the district court made no fact finding. The factual issue seems largely to turn on credibility, which we cannot resolve on appeal. We remand for further proceedings on the enhancement. If a proper Section 851(a) notice was filed and served on Blevins prior to the trial leading to her current conviction, consideration of the enhancement would be proper.

### IV.    *Motions to suppress evidence*

In evaluating a district court's ruling on a motion to suppress, we review findings of fact for clear error and conclusions of law *de novo. See United States v. Mata*, 517 F.3d 279, 284 (5th Cir. 2008). The district court denied the motion after hearing testimony, in which case "the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005). "Whether consent to a warrantless search is voluntary is a finding of fact reviewed for clear error." *Mata*, 517 F.3d at 284.

Blevins challenges the admissibility of the evidence produced at trial. The district court's final ruling on suppression incorporated all arguments raised by Blevins in her multiple motions to dismiss. Contrary to the Government's assertion on appeal, Blevins preserved her evidentiary challenges in her final motion to suppress. We review these arguments, denoting in our headings where Blevins first raised each challenge and where her arguments were first rejected by the district court.

*A. The validity of the arrest warrant (Second Motion to Suppress)*

Officer Hollingsworth obtained an arrest warrant following the five controlled crack purchases described above. The magistrate judge issued the

warrant on the facts we have already described, and this warrant ultimately led to the discovery of evidence used against Blevins at trial.

Blevins argues that the magistrate judge was either misled by the facts provided or was not provided with all relevant facts. Without holding there were deficiencies in the arrest warrant, the district court applied the *Leon* good-faith exception. *See generally United States v. Leon*, 468 U.S. 897, 922 (1984). The Supreme Court discussed search warrants in *Leon,* but later applied the good-faith exception to searches incident to an arrest warrant. *See Arizona v. Evans*, 514 U.S. 1, 15-16 (1995). A recent good-faith arrest warrant decision noted the parallelism: "The fact that a Fourth Amendment violation occurred — *i.e.*, that a search or arrest was unreasonable — does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)).

The rule applicable to both kinds of warrants is that "[e]vidence obtained during the execution of a subsequently invalidated search warrant is *not* excluded *if* the officer executing the warrant relied on it in good faith." *United States v. Gibbs,* 421 F.3d 352, 357 (5th Cir. 2005) (citing *Leon*, 468 U.S. at 922). If the good-faith exception applies, we do not determine whether the warrant was supported by probable cause. *Gibbs,* 421 F.3d at 357. Relevant here is that the "exception does not apply when the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) (quotation marks omitted).

Blevins argues that Hollingsworth intentionally omitted certain information in his affidavit to mislead the magistrate. Specifically, Blevins claims the affidavit omitted that the original complaint against her originated from an unknown source, that Hollingsworth had not worked with the CI

before or tested her reliability, that the CI was an acquaintance of hers, that Hollingsworth did not search the CI after stopping to buy candy, that the CI was not fully monitored on her way to make the purchase, and that Hollingsworth failed to disclose to the magistrate that the videotapes did not clearly depict her handing the crack cocaine to the CI.

Even if Blevins is correct that these facts are relevant, though most of them are not, she makes no effort to explain how these omissions are "dispositive, so that if the omitted fact[s] were included, there would not be probable cause." *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2006). Hollingsworth only called the CI reliable in his affidavit after the first controlled buy, in which evidence of the CI's reliability was obtained. Blevins does not explain why the CI's personal association with her undermines the CI's credibility. Blevins also does not explain how failing to provide the magistrate judge with the videotape which did not fully capture the actual transaction of the drugs would have undermined the testimony of Hollingsworth, who kept the CI under surveillance, even at the convenience store, and received the fruits of the transaction following the CI's purchase. Given the overwhelming evidence compiled during the five controlled purchases supporting probable cause for the arrest warrant, Blevins's challenge to the warrant fails.

*B. Search upon entry of the residence (First Motion to Suppress)*

The officers executed the arrest warrant at Blevins' trailer, where they believed Blevins could be found. The officers identified themselves, knocked on Blevins' trailer door, and entered after she opened it and retreated to the back of her home. The officers pursued Blevins and performed a protective sweep, which revealed a number of items in plain view, including a handgun. The officers performed a more thorough search following Blevins' consent to search her trailer. Blevins argues that the officers' execution of the arrest

warrant at her home was a pretext for a warrantless search. Pretext is proven, she maintains, by the fact that the officers had no authority to enter her trailer after she opened the door or that the officers should have not have performed the protective sweep once in her home.

"[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 602 (1980); *see also United States v. Jackson*, 596 F.3d 236, 241 (5th Cir. 2010). After entering the residence, the authorities may conduct a limited search for their own protection. *Jackson*, 596 F.3d at 241 (citing *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir.2006)). Evidence found in plain view of the officers while they are conducting their security sweep is admissible, but evidence recovered beyond the scope of the protective sweep is not. *Virgil*, 444 F.3d at 451. "[A] protective sweep may even occur after the *suspect* is arrested." *Id.*

The officers had a reasonable belief that Blevins was at home, a belief that was confirmed when Blevins answered the door following their knocks. The arrest warrant allowed the officers to pursue Blevins into her trailer after she answered the door. The officers, not knowing what or who was inside, reasonably performed a protective sweep. Blevins' statement that the security sweep should have ceased as soon as she was detained is without merit. S*ee id.* There is no evidence to suggest that the protective sweep was unnecessary or excessive in scope. The motion to suppress the evidence discovered during this search was properly denied.

*C. Consent to search (First Motion to Suppress)*

After Hollingsworth had restrained Blevins, he received her permission to search. She refused, though, to sign a consent form. Blevins now argues that her consent to search was involuntary. The district court found that only one piece of evidence, the few rocks of crack cocaine in the heart-shaped box,

were the result of the search conducted based on Blevins' consent.  All other evidence was discovered by the officers during the security sweep.  That fact finding is not clearly erroneous.

We evaluate the voluntariness of consent to search using these factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*United States v. Solis*, 299 F.3d 420, 436 n.21 (5th Cir. 2002).

As an initial matter, Blevins does not indicate how the district court's error with respect to her consent could be more than harmless given that only a few additional rocks of crack cocaine were uncovered due to the consensual search.  Regardless, the district court weighed each of the relevant factors and held that under the totality of the circumstances, Blevins' consent was voluntary.  A suspect need not be given *Miranda* warnings before consenting to a search.  *United States v. Dancy*, 861 F.2d 77, 80 (5th Cir. 1988).  Further, the district court found that Blevins was "very cordial and very cooperative" in her exchanges with Hollingsworth, indicating a lack of coercion.  Blevins also refused to sign a consent form, again suggesting that coercive techniques were not being applied.  The district court's conclusion that Blevins voluntarily gave her consent is neither based on clearly erroneous findings of fact nor improper analysis of the law.

### D. Admissibility of Blevins's statements to the officers at the field office (First Motion to Suppress)

Finally, Blevins argues that statements she made after she was given *Miranda* warnings at the field office were not admissible because an earlier statement from her had been coerced.  Hollingsworth claims that he informed Blevins of her *Miranda* rights shortly after entering the trailer, but the district

court held that the warnings were invalid because Hollingsworth provided no corroboration that he had given the warnings. Therefore, Blevins' statement that there was "crack hidden all over this house" was inadmissible. Blevins now argues that Hollingsworth's initial failure to administer the *Miranda* warnings tainted her later confession at the police field office, where Blevins provided a second confession after being advised of her rights.

Generally, "administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Oregon v. Elstad*, 470 U.S. 298, 313 (1985). Whether an admission obtained through coerced confession taints a second confession depends upon considerations such as "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators." *Id.* at 310.

In a precedent on which Blevins strongly relies, officers intentionally interrogated a suspect without advising him of his *Miranda* rights in order to obtain a confession; once obtaining the confession, officers gave the warnings and the defendant was questioned again in order to have the confession repeated. *Missouri v. Seibert*, 542 U.S. 600, 605 (2004). The Court held that the question-first, warnings-later technique was adopted to undermine the *Miranda* warnings, and the entire process was a continuum that made both warned and un-warned confessions inadmissible. *Id.* at 616-17.

Nothing about the officers' handling of Blevins' interrogation resembles what occurred in *Seibert*. The record does not support the suggestion that Hollingsworth's initial admission that there was "crack hidden all over [the] house" was a product of coercion. The district court excluded this statement after finding that Hollingsworth could not prove he administered the *Miranda* warnings. All of the other district court's findings support that neither Hollingsworth nor any other officer engaged in coercive tactics. There was no

No. 13-30090

evidence of coercion at the field office, where the questioning occurred, removed meaningfully in time and place from Blevins's original statement. *See Elstad*, 470 U.S. at 310. Blevins has not shown that her post-*Miranda* inculpatory statements were in any way the product of coercive tactics, the district court did not err in finding them admissible.

The judgment of conviction on all counts is AFFIRMED. The sentence on Count One is VACATED and the cause is remanded for further proceedings on sentencing as to that count. All other sentences are AFFIRMED.

22