NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3135
_____

UNITED STATES OF AMERICA

v.

DANIEL GATSON,
a/k/a Tokyo Gatson,
a/k/a Craig
a/k/a Big Country

Daniel Gatson,
            Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 2-13-cr-00705-001)
District Judge: Honorable William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2018

Before: AMBRO, JORDAN, and VANASKIE, Circuit Judges

(Opinion filed: August 9, 2018)
_____

OPINION*
_____

AMBRO, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Daniel Gatson was convicted of one count of conspiracy to transport stolen goods over state lines, in violation of 18 U.S.C. § 371, and eleven counts of transporting stolen property over state lines, in violation of 18 U.S.C. § 2314. He was sentenced to 300 months in prison and three years of supervised release. He appeals his convictions and his sentence by bringing five issues before us. We disagree with him on each and thus affirm.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction per 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. *United States v. Grant*, 887 F.3d 131, 137 (3d Cir. 2018).

**I.        Suppression of Evidence Obtained with Communication Data Warrants**

Gatson argues the District Court improperly denied his motion to suppress evidence under the Supreme Court's recent decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). He also claims his Fourth Amendment rights were violated. We review the District Court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005).

Here the Government obtained communication data warrants for two cell phones: Nikia Henry's cell phone and Phone 1.[1] Nikia Henry rented minivans for Gatson. Phone 1 is a burner phone not associated with any subscriber information but attributed to Gatson.

---

[1] The communication data warrants were initially obtained under New Jersey law. As the District Court pointed out, for "the use [of state-obtained evidence] in federal court . . . , federal law applies . . . ." Thus the warrants are governed by the Federal Stored Communications Act. 18 U.S.C. § 2703. *United States v. Gatson*, Crim. No. 13-705, 2014 WL 7182275, at *5 (D.N.J. Dec. 16, 2014).

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). He must demonstrate "he personally has a legitimate expectation of privacy in the object that was searched." *United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014).

The District Court found that Gatson did "not establish[] that he personally ha[d] a legitimate expectation of privacy in either [cell phone]." *United States v. Gatson*, Crim. No. 13-705, 2014 WL 7182275, at *5 (D.N.J. Dec. 16, 2014). Further, he "made no claim that he ever owned, possessed, used, or had any privacy interest whatsoever in [Phone 1]." *Id.* at *5. On appeal, Gatson points to the Government's attribution of Phone 1 to him as evidence of his standing to make a claim. However, this attribution by the Government does not meet Gatson's burden because he must demonstrate his "expectation of privacy" in the phones. *Stringer*, 739 F.3d at 396. Without a personal interest in the cell phones, Gatson lacks standing to assert suppression of the data obtained relating to them. Hence the District Court did not err in denying Gatson's motion to suppress evidence.

## II.     Suppression of Evidence Obtained from the Hotel Room

Gatson contends the District Court erred also in denying his motion to suppress evidence seized from a search of his hotel room. As above, we review the District Court's factual findings for clear error and its legal conclusions *de novo*. *Lockett*, 406 F.3d at 211. The search of his hotel room without a search warrant was, according to Gatson, "presumptively unconstitutional" and, in any event, the District Court improperly

3

applied the plain-view exception. Gatson Br. at 25. Authorities accessed his hotel room with an arrest, but not a search, warrant. There they seized items they recognized as "incriminating" that were purportedly in plain view. An "identification card, handwritten notes, a restaurant receipt, work boots, [and] a cell phone" were located in the room.[2] Gatson Br. at 24. Jewelry was discovered in the toilet bowl in the bathroom. The authorities performed a "protective sweep" of the bathroom, as they allegedly noticed Gatson walk to and from it while they broke down the hotel room's door. As only an arrest warrant was used, Gatson contends the items seized are inadmissible. We agree with the District Court's deft and detailed analysis of the plain-view exception and its conclusion that the items seized are admissible; we adopt both as our own.

The Fourth Amendment requires warrants for searches of a person or his property. There are, however, exceptions. One, the plain-view exception, applies when an officer is legally present where the evidence is in plain view, the "incriminating character" of the evidence is "immediately apparent," and there is "a lawful right of access to the object itself." *Horton v. California*, 496 U.S. 128, 136-37 (1990) (citation omitted).

As detailed by the District Court, the officers were legally present in Gatson's hotel room with an arrest warrant (also conceded by Gatson), they recognized in plain view each seized item as relating to the conspiracy, and they had "a lawful right of access to the object[s]." *Id.* at 137. Gatson specifically contends that the jewelry, located in the bathroom's toilet bowl, was not in plain view. However, the plain-view exception extends to protective sweeps, and the jewelry was plainly evident during the protective

---

[2] Additional items were taken from the room but were not offered into evidence.

4

sweep of the bathroom. *See United States v. Blevins*, 755 F.3d 312, 325 (5th Cir. 2014). Again the District Court did not err in denying Gatson's motion to suppress evidence.

### III.     Admission of Conspirator Testimony

Gatson's third claim challenges the admission of testimony by his co-conspirators about his recruiting tactics. Gatson contends it did not "have a proper evidentiary purpose" and was not "relevant" under Federal Rule of Evidence 404. He also asserts it was "unfair[ly] prejudic[ial]" under Rule of Evidence 403. Thus we review for abuse of discretion. *United States v. Green*, 617 F.3d 233, 239 (3d Cir. 2010). The District Court deemed the evidence admissible as intrinsic evidence. We agree.

Our Court has held "acts are intrinsic when they directly prove the charged conspiracy." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002). Gatson was charged with committing a federal criminal conspiracy in violation of 18 U.S.C. § 371. This involves three factors: "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001). Agreement and knowledge can be established with circumstantial evidence. *United States v. Whiteford*, 676 F.3d 348, 357 (3d Cir. 2012). The testimony regarding Gatson's glamorization of burglary to recruit conspirators directly contributes to establishing a key element—agreement to commit a crime—of the conspiracy with which he is charged.

5

In light of the District Court's determination that the evidence is intrinsic, we do not reach Gatson's Rule 404(b) argument. That Rule applies only in the absence of intrinsic evidence. *See Green*, 617 F.3d at 248-49; *United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999). Nor is his Rule 403 argument persuasive in any event. Under that Rule, district courts have "broad discretion to determine the admissibility of relevant evidence," and their Rule 403 rulings are entitled to deference "unless . . . arbitrary or irrational." Egan v. Del. River Port Auth., 851 F.3d 263, 275 (3d Cir. 2017). Here, because the District Court's Rule 403 determination was neither arbitrary nor irrational, we will not disturb it.

The District Court's decision that the evidence was intrinsic and admissible was not "arbitrary, fanciful, or clearly unreasonable." *Green*, 617 F.3d at 239 (quoting *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009)). Thus there was no abuse of discretion.

## IV.    Denial of *Daubert* Hearing

Gatson contests the denial of a *Daubert* hearing to determine the admissibility of expert testimony by the Government's purported expert under Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). We review the District Court's decision for abuse of discretion and its Rule 702 legal conclusions *de novo*. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 81 (3d Cir. 2017). Gatson claims the methodology used by the expert, FBI Special Agent Scott D. Eicher, was unreliable and "extremely harmful" to his case. Gatson Br. at 47. After thoroughly analyzing

6

*Daubert*'s reliability and relevance requirements, the District Court concluded that a *Daubert* hearing was unnecessary. We agree with its reasoning and adopt it as our own.

*Daubert* requires "the trial judge [to] determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. The focus is on two considerations: reliability and relevance. *Id.* at 594-95 ("[The inquiry's] overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission."). Numerous factors bear on the reliability determination, including whether the methodology has been "tested," "subjected to peer review and publication," its "known or potential rate of error," and its "general acceptance." *Id.* at 593-94. The test is "a flexible one." *Id.* at 594. The District Court deemed Eicher's testimony reliable because the data he imparted had been "admitted by other courts on numerous occasions," "widely accepted across the country," determined to be reliable by the FBI, confirmed by GPS tracking technology, and the scope of the testimony was sufficiently narrow—Eicher was only testifying to "the general location of where Gatson's cell phone would have to be . . . to utilize certain cell sites." *United States v. Gatson*, Crim. No. 2:13-CR-705 (WJM), 2015 WL 5920931, at *2 (D.N.J. Oct. 9, 2015).

We agree with the Court's analysis and conclusion regarding the reliability of the testimony.[3] Judges are granted "broad discretion . . . in assessing the relevance and

_____

[3] While Gatson does not make a relevance claim, the District Court also performed an analysis and determined "that the proposed testimony meets *Daubert*'s relevancy

7

reliability of expert testimony" and in performing their "gatekeeping function." *United States v. Alatorre*, 222 F.3d 1098, 1100 (9th Cir. 2000). In this context, it did not abuse its discretion in denying Gatson's request for a *Daubert* hearing.

## V.     Sentence

Gatson argues also that his sentence—300 months in prison and three years of supervised release—was unreasonable. Once again our review is for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Gatson's initial Guidelines range was 210 to 262 months. This sentence took into consideration enhancements for a number of factors, including the total value of the losses from the burglaries, Gatson's capacity as conspiracy leader, and whether there was an obstruction of justice. The Court applied an upward variance after increasing Gatson's Guidelines range to 262–327 months. The ultimate 300-month sentence, he claims, was "excessive," as the Court improperly considered his "continued declarations of innocence," "ignore[d] important facts on the record," and created "an unwarranted [sentencing] disparity" among co-conspirators. Gatson Br. at 50, 52-53. He also argues the Court ignored that they were unarmed and stopped the mission if victims were home or returned home mid-burglary. Finally, he contends the disparity is not merited when other conspirators also had substantial criminal histories and received significantly lesser sentences.

Under 18 U.S.C. § 3553, a sentence should be "sufficient, but not greater than necessary," to "reflect the seriousness of the offense, to promote respect for the law, and

---

requirement." *United States v. Gatson*, Crim. No. 2:13-CR-705 (WJM), 2015 WL 5920931, at *2 (D.N.J. Oct. 9, 2015).

to provide just punishment for the offense[,]" deter future crimes, "protect the public[,]" and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2).

In examining these factors, the main concern of the District Court was protecting the public. Citing Gatson's 25-year-long criminal history, it explained a long sentence was required for public safety. It also noted his extensive criminal history in justifying an upward variance from the Guidelines range: "A [G]uideline[s] sentence here would provide adequate deterrence to others[,] but . . . it won't to you." AA2411. Because it found that the burglaries endangered the public, the Court also deemed the offenses to be of a serious nature.

We "must give due deference to the [D]istrict [C]ourt's decision that the § 3553(a) factors . . . justify the extent of the variance. The fact that [we] might reasonably . . . conclude[] that a different sentence [is] appropriate is insufficient to justify a reversal of the [D]istrict [C]ourt." *Gall*, 552 U.S. at 51. Thus we cannot conclude here that the sentence imposed by the District Court was unreasonable.

*     *     *     *     *

For these reasons, we affirm both of the District Court's denials of Gatson's motions to suppress evidence, its admission of the conspirator testimony, its denial of the *Daubert* hearing, and its sentencing determination.

9