# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 5, 2010

No. 09-60521

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOSEPH MCNEALY,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Mississippi

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Joseph McNealy appeals his conviction for possession and receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), (a)(4)(B). He raises a number of issues, including whether the Speedy Trial Act was violated, the pornographic depictions of children were properly authenticated as images of actual children, and the destruction of his computer's hard drives was in bad faith. We affirm.

**I**

A nationwide investigation of commercial child-pornography websites revealed evidence that Joseph McNealy had purchased memberships to a number of such sites. Federal agents interviewed McNealy at his residence, and he consented to a search of his computer. That initial search discovered

No. 09-60521

pornographic images of children on a hard drive.  McNealy then consented in writing to the seizure of the computer for further examination.

More than 9,000 pornographic images of children were found.  These images had been downloaded from commercial websites and other internet sources.  Federal agents created "forensic image" copies of the three hard drives in McNealy's computer; however, his computer and its hard drives were subsequently destroyed.  McNealy was indicted for knowing possession and receipt of child pornography in violation of 18 U.S.C. § 2252(a).  Before trial, the district court granted continuances at the requests of both McNealy and the Government.  At trial, the Government introduced print-outs of some of the images found on McNealy's computer, using the forensic image copies of two of the hard drives.  McNealy was found guilty on all charges and sentenced to 70 months of imprisonment, followed by a life term of supervised release.  This appeal followed.

## II

We first consider McNealy's argument that the Speedy Trial Act[1] was violated.  The district court granted three continuances, one of which resulted in only a one-day change in the trial date.  We therefore focus on the two continuances that more substantially extended the trial date.  "We review the district court's factual findings supporting its Speedy Trial Act ruling for clear error and its legal conclusions *de novo*."[2]

McNealy contends that the court was required to but did not make contemporaneous findings on the record that the ends of justice served by the continuances outweighed the best interest of the public and the defendant in a speedy trial.  Such findings were not made part of the record until the district

---

[1] 18 U.S.C. §§ 3161-3174.

[2] *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007).

No. 09-60521

court issued an order denying McNealy's motion to dismiss for the alleged violations of the Act.  McNealy contends that because of the absence of findings in each of the orders granting continuances and due to the failure of the first order granting a continuance to set a trial date, 200 days of delay occurred that were not excludable under the Act.

The Speedy Trial Act generally requires a defendant's trial to start within 70 days of his indictment or his appearance before a judicial officer.[3]  However, recognizing that there are "valid reasons for greater delay in particular cases,"[4] the Act includes a long list of exclusions from the calculation of the date by which trial must commence.[5]  McNealy does not contend that any of the continuances were granted for reasons other than an enumerated exception.

McNealy initially appeared on November 9, 2007.  The 70-day requirement began running on that day.  The first continuance at issue was granted on December 21, 2007, at McNealy's request on the basis that his counsel would be attending National Guard training for much of the month of January, and trial was set for January 7, 2008.  McNealy asserted in his motion seeking this continuance that it was necessary "in order that justice might be served."  The district court's order granting the continuance made no findings to that effect, but subsequently, in an order dated November 28, 2008, the district court did set forth in writing its finding in this regard.

The Act provides in § 3161(h)(7)(A) that if a district court grants a "continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," the court must "set[] forth, in the record of the case, either orally

_____

[3] 18 U.S.C. § 3161(c)(1).

[4] *Zedner v. United States*, 547 U.S. 489, 497 (2006).

[5] 18 U.S.C. § 3161(h).

or in writing, its reasons for" such finding.[6]  If the court fails to do so, "[n]o such period of delay resulting from a continuance granted by the court . . . shall be excludable" under this exception.[7]  The Supreme Court has held that "[a]lthough the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance . . ., the Act is ambiguous on precisely when those findings must be 'se[t] forth, in the record of the case.'"[8]  "[A]t the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss,"[9] although "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance."[10]  In the present case, the district court stated in its order denying McNealy's motion to dismiss that it "emphasizes that the following findings were made 'in the judge's mind, before granting the continuance,' and are here made part of the record."  The order then set forth specific findings that are set forth in the margin.[11]  This was sufficient to satisfy the requirements of § 3161(h)(7)(A).[12]

On April 2, 2008, the Government moved for a further continuance due to the unavailability of a witness for trial.  The district court granted the

---

[6] 18 U.S.C. § 3161(h)(7)(A).

[7] *Id.*

[8] *Zedner*, 547 U.S. at 506-07 (quoting 18 U.S.C. § 3161(h)(7)(A)).

[9] *Id.* at 507.

[10] *Id.* n.7.

[11] "In this case, the defendant requested, and was granted, additional time for his counsel to prepare for trial.  The Court found that to deny the continuance would have deprived the defendant of reasonable time necessary for effective preparation, and that the ends of justice would be served by granting the continuance requested by the defendant.  The Court also found that the ends of justice served by the granting of the continuance outweighed the best interests of the public and the defendant in a speedy trial."

[12] *Zedner*, 547 U.S. at 507.

No. 09-60521

continuance, setting trial for June 23, 2008.  This order continued the tolling of the time limit under the Speedy Trial Act because of the witness absence exclusion.[13]  The requirement that a district court set forth its findings regarding the ends of justice in § 3161(h)(7)(A) does not apply to a continuance that is granted under § 3161(h)(3) on the basis of the "absence or unavailability of . . . an essential witness."[14]  The district court found, in addition to other findings, that the Government's witness "was both a material and an essential witness for the [G]overnment's case in chief," she was unavailable on the date of trial, and the Government had exercised due diligence in attempting to obtain her presence at trial.

McNealy also argues that the first continuance did not satisfy the requirements of the Act because the order granting it did not specify a trial date.  However, a district court may decide to continue a trial indefinitely when "'it is impossible, or at least quite difficult, for the parties or the court to gauge the length of an otherwise justified continuance.'"[15]  If the continuance is for a substantial length of time, it "must be adequately justified by the circumstances of the particular case."[16]  The record establishes that the district court's decision not to set a trial date in its December 21, 2007, order was fully reasonable and justified, as McNealy's initial counsel was attending National Guard training and his pro hac vice counsel's initial motion to appear was denied, and his counsel was not admitted to the district court bar until February 19, 2008.  The

---

[13] *See* 18 U.S.C. § 3161(h)(3)(A).

[14] *See United States v. McNeil*, 911 F.2d 768, 773 (D.C. Cir. 1990) (concluding that "paragraph (h)[(7(A))] is not applicable to an 'essential witness' delay"); *United States v. Bourne*, 743 F.2d 1026, 1031 (4th Cir. 1984) (concluding that § 3161(h)(3)(A) "does not require that the trial judge make specific findings that the ends of justice require the continuance").

[15] *United States v. Westbrook*, 119 F.3d 1176, 1187 (5th Cir. 1997) (quoting *United States v. Jones*, 56 F.3d 581, 586 (5th Cir. 1995)).

[16] *Jones*, 56 F.3d at 586.

5

No. 09-60521

trial court set a trial date on March 13, 2008.  McNealy's arguments regarding the Speedy Trial Act have no merit.

### III

McNealy contends that images retrieved from his computer and alleged to be child pornography were improperly admitted because they were not authenticated under Federal Rule of Evidence 901 and did not comport with the best-evidence principles embodied in Federal Rule of Evidence 1002. "We review a district court's evidentiary rulings for an abuse of discretion."[17]  McNealy preserved the authentication issue, so we apply the harmless error standard of review.[18]  He did not preserve his best-evidence contention, so our review is for plain error.[19]

Federal Rule of Evidence 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[20]  Evidence may be authenticated by testimony of a witness with knowledge that a matter is what it is claimed to be.[21]  The images at issue are photographs within the meaning of Rule 1001(2).[22]

McNealy asserts that because no witness testified that the printed images of child pornography the Government introduced were "unaltered images of actual minors actually engaged in the conduct depicted," the evidence should

---

[17] *United States v. George*, 201 F.3d 370, 372 (5th Cir. 2000).

[18] *United States v. Williams*, 957 F.2d 1238, 1240-41 (5th Cir. 1992).

[19] *United States v. Jimenez*, 256 F.3d 330, 340 (5th Cir. 2001).

[20] FED. R. EVID. 901(a).

[21] FED. R. EVID. 901(b)(1).

[22] FED. R. EVID. 1001(2) ("'Photographs' include still photographs, X-ray films, video tapes, and motion pictures.").

No. 09-60521

have been excluded.  He asserts that the jurors were incapable of determining if the images depicted real minors or instead depicted virtual images of minors engaged in sexually explicit activity, the latter of which, the Supreme Court has held, are constitutionally protected speech.[23]

A government witness, Richard Kaplan, testified regarding the images retrieved from McNealy's computer that were admitted into evidence over McNealy's objections.  During voir dire of Kaplan regarding the admissibility of the images, McNealy's counsel elicited testimony that Kaplan was not present when the images were taken and had no personal knowledge of how the images were taken.  When asked if one of the images depicted a real person, Kaplan responded, "It looks like a real person to me," but that he had never met her. The image looked to him to be a ten- or twelve-year-old girl.  When asked if it was in "the realm of possibility that this is a fake image," "a completely fake image that just looks like a real person," the witness answered, "I don't know. . . ."  During cross-examination, in the presence of the jury, Kaplan similarly testified that he was not the photographer and was not present when the images were taken, but he believed the images to be those of "real girls" and "real minors."  He conceded that he did not "have the ability to look at these images and tell this jury if they've been altered or not," although there was no discussion of what "altered" meant and no context from which its meaning was clear.

Based on this testimony, McNealy contends that the government did not satisfy its burden of authenticating the images.  Our court[24] and other circuit

---

[23] *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 254-56 (2002) (holding that creating, possessing and distributing virtual images of child pornography is "protected speech").

[24] *United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam).

courts[25] have considered and rejected similar arguments post-*Free Speech Coalition*. We held in *United States v. Slanina* that expert testimony or additional evidence, other than the images themselves, "was not required."[26] As in the present case, we noted that the defendant did not contend that any of the downloaded images "were virtual children, and not real children."[27] We concluded that "*Free Speech Coalition* did not establish a broad requirement that the Government must present expert testimony to establish that the unlawful image depicts a real child."[28] We agreed with the Tenth Circuit that "'[j]uries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge.'"[29] We

---

[25] *See United States v. Salcido*, 506 F.3d 729, 733-34 (9th Cir. 2007) (per curiam) ("We agree with every other circuit that has ruled on the issue that expert testimony is not required for the government to establish that the images depicted an actual minor," and "there seems to be general agreement among the circuits that pornographic images themselves are sufficient to prove the depiction of actual minors."); *United States v. Rodriguez-Pacheco*, 475 F.3d 434, 438-39 (1st Cir. 2007) (confirming that there is no "per se rule that the government must produce expert testimony in addition to the images themselves, in order to prove beyond a reasonable doubt that the images depicted are of real children" and "the mere possibility, unsupported by evidence, that the images could have been produced by use of technology and not using real children was not sufficient to reject a lower court's ruling founded on reasonable inferences derived from experience and common sense," although there was some expert testimony in that case); *United States v. Farrelly*, 389 F.3d 649, 652 (6th Cir. 2004) ("*Free Speech Coalition* does not require the Government to do more in the context of this case than present the images to the jury for a determination that the depictions were of actual children"), *abrogated on other grounds by United States v. Williams*, 411 F.3d 675, 678 n.1 (6th Cir. 2005); *United States v. Kimler*, 335 F.3d 1132, 1142 (10th Cir. 2003) (concluding on plain error review that "[j]uries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge"); *United States v. Deaton*, 328 F.3d 454, 455 (8th Cir. 2003) (per curiam) (observing "we have previously upheld a jury's conclusion that real children were depicted even where the images themselves were the only evidence the government presented on the subject" and holding "[h]aving viewed the exhibits, we find no plain error").

[26] 359 F.3d at 357.

[27] *Id.*

[28] *Id.*

[29] *Id.* (quoting *Kimler*, 335 F.3d at 1142).

reasoned that "[t]he district court, as the trier of fact in this case, was capable of reviewing the evidence to determine whether the Government met its burden to show that the images depicted real children."[30]

McNealy points to two exchanges in the record that he contends establish that neither the jurors nor the district court were capable of determining whether the images admitted at trial were of actual rather than virtual children. The first exchange was during voir dire of the venire when McNealy's counsel asked prospective jurors whether they had "the ability from past skill, training, experience, whatever, to look at a digital image and [] tell which ones have been changed, things have been altered, red eyes removed, you can figure that out by looking." No juror responded affirmatively. This question, by its own terms, inquires only about relatively minor alterations to images of actual individuals. Even if it were proper to voir dire the venire regarding expertise in discerning whether images are of actual or virtual children, an issue we do not broach today, the voir dire in this case did not elicit that information.

The second exchange on which McNealy relies occurred in chambers when McNealy argued that the question he posed to the venire, discussed above, established that the jury was incapable of distinguishing images of virtual children from images of actual children. The district court rejected this argument, but in doing so, made remarks that are quoted in the margin.[31] Later

---

[30] *Id.*

[31] The district court stated:

> I don't think any juror and very few, if any, judges, have the expertise to look at an image and make a determination as to whether or not this is a real child or this is a virtual image. I don't see how the Congress, Supreme Court or any other court can expect that of a judge or a jury; and yet the courts have said it is a jury issue.
>
> This is an area of the law, in my opinion, that needs to be cleared up. It needs to be, because where we are here is the jury has to find that these are real

No. 09-60521

during the trial, counsel for McNealy referred to these remarks regarding the ability of jurors to discern whether the images were of actual children, arguing, "the court's already ruled on the record that it doesn't believe the jury can know that [the images were of actual minors] by looking at these images, that an expert can know that." The district court interrupted, stating, "I didn't say that, now counselor. I think you misunderstood me. I said that – initially, in one of our conferences I believe I stated it would be a jury issue. I can see how it would be difficult, but I didn't say the jury could not do that." The district court admitted the challenged exhibits, overruling McNealy's objections to their authenticity. When the case was submitted to the jury, the district court gave a written instruction regarding the allegation that McNealy possessed a visual depiction of minors engaging in sexually explicit conduct. The written instruction directed the jury that it "must be convinced that the Government has proved . . . beyond a reasonable doubt . . . [t]hat an actual minor was the subject of the visual depiction." This same instruction was repeated three more times in connection with the other counts in the indictment.

The district court complied with the law prevailing in this and other circuits. The court admitted the challenged exhibits, which appear to be what they purported to be, images of actual prepubescent girls and young teen girls (not fully matured), engaging in various forms of sexually explicit conduct. The district court permitted the jury to determine whether the images were of actual rather than virtual children. Nothing in the record, including the images

_____

children. I concede that to you and that is the law. But they don't have the expertise to do that. I don't know if anyone without special training has the expertise to do that.

And so where are we in this case? And that's an open question. I don't know the answer to it. All I know is I'm going to try to instruct this jury on the law as I understand it and give the defense latitude in cross-examination and in argument on that issue and I will consider in the next hour whether the court should be more specific in its instructions in that regard.

10

No. 09-60521

themselves, suggests that they are anything other than images of actual pre-pubescent children and young teenage girls engaged in what McNealy concedes is lewd and lascivious conduct.  Moreover, there is no evidence in the record before us that the state of technology is such that images of this nature could have been generated using virtual children.  While it remains the Government's burden to show that actual children were depicted, the images themselves sufficed to authenticate them in this regard.

We note that after the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*,[32] Congress amended the Child Pornography Prevention Act of 1996 and made certain findings.[33]  Congress found in 2003 that "[t]here is no substantial evidence that any of the child pornography images being trafficked today were made other than by the abuse of real children," and

> [l]eading experts agree that, to the extent that the technology exists to computer generate realistic images of child pornography, the cost in terms of time, money, and expertise is--and for the foreseeable future will remain--prohibitively expensive.  As a result, for the foreseeable future, it will be more cost-effective to produce child pornography using real children.[34]

These findings are not evidence in a criminal trial.  They do not indicate, however, a need to revisit our prior decision in *Slanina*,[35] even if a panel of this court had authority to do so.

The district court did not abuse its discretion in concluding that the child pornography images were authenticated under Federal Rule of Evidence 901. We similarly conclude that the district court did not plainly err, if it erred at all,

---

[32] 535 U.S. 234 (2002).

[33] *See* 18 U.S.C. § 2251.

[34] *Id.*

[35] *United States v. Slanina*, 359 F.3d 356 (5th Cir. 2004).

No. 09-60521

in overruling McNealy's argument that admission of the child pornography images violated Federal Rule of Evidence 1002.

Rule 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules." Rule 1003 states that a "duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." McNealy asserts that the Government did not establish that the images were either originals or duplicates.

This argument is unavailing. The forensic imaging process produced an exact copy of the digital files on McNealy's computer, these files were then captured on DVDs, and the exhibits were printed from the DVDs. The Government presented evidence establishing the chain of custody and the technology utilized. McNealy does not argue that the printouts were not accurate representations of the photos on his hard drive. Rather, his argument appears to be that the Government failed to prove that the images depict actual children, an argument we rejected above and that is not pertinent to the Rule 1002 inquiry. The district court's admission of the photographic evidence did not violate Federal Rule of Evidence 1002.

## IV

McNealy asserts that the district court erred when it denied his pretrial motion to dismiss the indictment for a fair trial violation. He contends that the Government prevented him from "perform[ing] three tasks" essential to his defense, which were (1) researching the origin of the pornographic images, (2) creating digital image exhibits to demonstrate that apparent pornography images are visually indistinguishable from pornographic images of actual minors, and (3) creating exhibits from the Government's exhibits to support

defense expert testimony.  McNealy argues that he could not complete these tasks because defense experts attempting to do so would be put at risk of prosecution under the child pornography statute.

We review a district court's denial of a motion to dismiss an indictment de novo.[36]  We review the district court's underlying factual findings for clear error.[37]

Certain restrictions on the use of child pornography in a criminal proceeding are found in 18 U.S.C. § 3509(m).  Section 3509(m)(1) provides that child pornography "shall remain in the care, custody, and control of either the Government or the court."  Section 3509(m)(2)(A) requires a court to deny any request by the defendant to reproduce child pornography "so long as the Government makes the property or material reasonably available to the defendant."  Material is "reasonably available" if the Government "provides ample opportunity for inspection, viewing, and examination at a Government facility of the property or material by the defendant, his or her attorney, and any individual the defendant may seek to qualify to furnish expert testimony at trial."[38]

McNealy had full access to the Government's exhibits and could have completed all the tasks he now enumerates.  McNealy was free to prepare digital image exhibits in order to demonstrate that apparent contraband images are indistinguishable from real contraband images.  Likewise, he was free to review all the Government's exhibits.  As for McNealy's claim that defense witnesses could be subject to prosecution, McNealy could have obtained a protective immunity order if one had been warranted.  McNealy identifies no witness that

---

[36] *United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007).

[37] *United States v. Hamm*, 659 F.2d 624, 637 (5th Cir. Unit A Oct. 1981).

[38] 18 U.S.C. § 3509(m)(2)(B).

refused to cooperate. He did not identify any expert that he wished to consult or had the expert been given access to the images. McNealy called no witnesses and offered no evidence in his defense. The district court did not err in denying McNealy's motion to dismiss for a fair trial violation.

## V

McNealy argues that the district court erred when it found that the Government's destruction of his computer was not in bad faith. McNealy asserts that the district court should have granted his motion for a judgment of acquittal due to the Government's failure to preserve the computer.

Failure to preserve material exculpatory evidence violates due process rights irrespective of whether the government acted in good or bad faith.[39] However, failure to preserve merely potentially useful evidence does not constitute a denial of due process absent a showing of bad faith.[40] We review a district court's bad-faith determination for clear error.[41]

After the Government seized McNealy's computer, the Asset Forfeiture Division of the U.S. Attorney's Office filed a civil in rem action for forfeiture of the computer. The attorneys handling the in rem action worked in a separate branch of the U.S. Attorney's Office from the attorneys handling the criminal case, and the attorneys in the present case did not know of the forfeiture proceeding. Notice of the in rem complaint was published in a local newspaper for three weeks after its filing. Although McNealy had previously indicated in a form that he intended to contest the forfeiture proceeding, the Asset Forfeiture Division did not notify McNealy personally about the proceeding. McNealy did

---

[39] *Illinois v. Fisher*, 540 U.S. 544, 547 (2004).

[40] *United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006) (citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)).

[41] *United States v. Gibson*, 963 F.2d 708, 711 (5th Cir. 1992).

No. 09-60521

not contest the forfeiture action, and, after a default judgment, the computer was destroyed.

Before the computer was destroyed, federal agents made "forensic image" copies of the three hard drives in McNealy's computer. A government computer-forensics specialist confirmed that two of the three hard drives had been exactly copied. The copy of the third hard drive contained a small number of errors (approximately 0.0004861% of the hard drive's total storage capacity) in sectors of the hard drive remote from actively used sectors, indicating that the computer never used the defective sectors for data storage. The Government did not offer evidence from the partially defective hard drive copy at trial.

McNealy argues that the destruction of the computer violated his due process rights. He suggests that the mishandling of the defective hard drive prohibited him from using "exculpatory evidence potentially available on it." He also argues that he should not be forced to rely on the Government's claims that the two remaining hard drive copies were accurate, given that the originals were destroyed.

The destroyed evidence should be considered "potentially useful evidence" rather than "material exculpatory evidence."[42] McNealy does not argue that he knows of any potentially exculpatory evidence, nor does he identify what evidence might be contained in the partially defective hard drive. He also does not argue that potentially exculpatory evidence might be contained in the correctly copied hard drives. Thus, McNealy's claim should be analyzed under the bad-faith standard.[43]

The district court found that the Government's destruction of McNealy's computer was not in bad faith. According to the court, there was

---

[42] *See Fisher*, 540 U.S. at 547-48.

[43] *Id.*

15

not a real clear explanation to what happened to it.  It seems to me that there were several arms of the federal government working on this case and many other cases and that simply the evidence in being transported back to the FBI or back to some other federal agency was either misplaced or lost. There's no evidence here that this evidence was destroyed purposefully.

The Government was at least negligent in destroying McNealy's computer. McNealy specifically requested that his computer be returned to him. Despite this request, the Government did not send notice of the forfeiture proceeding to McNealy personally.   Rather, it published notice of the action in a local newspaper and eventually destroyed the computer. As the district court found, this was not reasonable notice.   However, there is no evidence that the Government acted in bad faith. The attorneys in this case did not know of the forfeiture action, and there is no evidence that they intended to destroy the evidence in order to impede McNealy's defense.  Indeed, it appears highly likely that all relevant evidence was preserved in the forensic images of the hard drives.  The original computer was destroyed as a result of miscommunication between divisions of the federal government, not as a result of bad faith. Therefore, the district court did not err in finding that the Government's destruction of McNealy's computer was not in bad faith, and this destruction did not violate McNealy's due process rights.

## VI

McNealy contends that the evidence was insufficient to support his conviction because it failed to show that he knew that the images he possessed depicted actual minors.  We review a jury verdict under a "highly deferential" standard.[44]  "We will affirm the jury's decision if, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a

---

[44] *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002).

reasonable doubt."[45]   "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt."[46]

In order to be convicted under 18 U.S.C. § 2252(a) for knowing receipt and possession of child pornography, a defendant must know that the images depict actual minors engaged in sexually explicit conduct.[47]   The relevant scienter requirement goes both to the receipt and possession of the material, and to the nature of the images.[48]

The facts and information presented to the jury clearly support McNealy's conviction.   The Government presented exhibits of the images themselves and evidence of how McNealy obtained the images.   As already discussed, juries are capable of distinguishing between real and virtual images of minors, and they could find beyond a reasonable doubt that McNealy could as well.[49]   Additionally, the methods by which McNealy located and downloaded the images at issue support a finding that he knew the images depicted actual minors.   The search histories on McNealy's computer revealed that he searched online using terms that included "pre-teen girls" and "preteen girls russian."   He created bookmarks to save the addresses of favorite websites including one that's name contained "LOLITA young preteen."   McNealy accessed multiple commercial child-pornography websites, viewed and saved images from them, joined child-

---

[45] *United States v. Clark*, 577 F.3d 273, 284 (5th Cir. 2009) (internal quotation marks omitted).

[46] *Id.*

[47] *See* 18 U.S.C. § 2252(a)(2) and (4); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

[48] *X-Citement Video*, 513 U.S. at 68-69, 78.

[49] *See United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2004) (per curiam).

pornography internet newsgroups, searched the internet for "lolita" themed pornography, and used peer-to-peer file sharing software to locate child pornography. He ultimately downloaded more than 9,000 images of child pornography. Given this evidence, a rational jury could have found beyond a reasonable doubt that McNealy knew that images he downloaded depicted actual minors.

## VII

Finally, McNealy argues that the district court erred in denying his motion for a directed verdict because the Government failed to authenticate its image evidence and the Government failed to prove that McNealy knew that the images depicted actual minors. As discussed above, these arguments fail. The district court did not err in denying McNealy's motion for a directed verdict.

\* \* \*

For the foregoing reasons, the district court's judgment is AFFIRMED.