# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 5, 2024

Lyle W. Cayce
Clerk

———————

No. 23-20276

———————

United States of America,

*Plaintiff—Appellant*,

*versus*

Paulo Jorge Da Costa Casqueiro Murta,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CR-514-8

———————————————————————

Before Wiener, Graves, and Douglas, *Circuit Judges*.

Jacques L. Wiener, Jr., *Circuit Judge*:[*]

The original opinion in this case was issued by this panel on November 28, 2023. We now GRANT the motion to recall the mandate and DENY the petition for panel rehearing. We therefore WITHDRAW our previous opinion and SUBSTITUTE the following:

Plaintiff-Appellant the United States of America (the "Government") appeals the district court's order granting the motion of Defendant-

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20276

Appellee Paulo Jorge Da Costa Casquiero Murta to dismiss his indictment. Because the district court did not err in dismissing the indictment pursuant to the Speedy Trial Act, but failed to properly determine whether the dismissal should be with or without prejudice, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Murta, a foreign national, was charged with conspiracy to commit money laundering, conspiracy to violate the Foreign Corrupt Practices Act, and money laundering. His indictment details a criminal conspiracy between two United States residents, Roberto Enrique Rincon Fernandez ("Rincon") and Abraham Jose Shiera Bastidas ("Shiera"), their U.S. businesses, and various then-current and former officials of Petróleos de Venezuela, S.A. ("PDVSA"), Venezuela's state-owned oil and energy company. The criminal enterprise was essentially a bribery and money laundering scheme: Rincon, Shiera, and their businesses would send money and gifts to PDVSA officials in exchange for contract awards and priority payment status during Venezuela's liquidity crisis. Murta, then a citizen of Portugal and Switzerland, worked in Portugal for a wealth management firm and allegedly assisted the bribery and money laundering scheme by facilitating or fabricating various financial transactions. On March 20, 2018, Murta participated in an interview in Lisbon, Portugal with four officials from the United States Department of Homeland Security and one inspector with the Portuguese judicial police. He was interviewed about his relationships with members of the alleged international conspiracy and the business entities associated with it. More than a year later, on April 24, 2019, Murta was named in a superseding indictment filed in the Southern District of Texas, for his alleged involvement in the bribery and laundering scheme. Murta fought extradition for almost two years. After being transported to Houston, Murta made his initial court appearance on July 12, 2021.

No. 23-20276

Murta's trial date was first set for August 30, 2021, but several district-wide special ends-of-justice continuance orders delayed his trial until October 13 at the earliest because of the COVID-19 pandemic. Consequently, on August 30, 2021, the district court reset the trial date to December 13, 2021. Pretrial proceedings continued for the next month and a half, without either party seeking a continuance or filing additional motions. Then, on November 8, 2021, the court entered a sua sponte ends-of-justice continuance order resetting the trial date to March 21, 2022. Neither the Government nor Murta objected to the court's sua sponte continuance at the time it was entered.

Murta filed several dispositive motions between February 21 and February 24, 2022. On February 27, 2022, the Government filed a motion for a status conference concerning the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 §§ 1-16,[1] asserting that the trial team had been alerted to the existence of potentially discoverable information that was protected by the statute. At the status conference, the Government represented that an intelligence agency had an interest in the protected information at issue, and that it would take several months to resolve the procedural issues involved with permitting the court to review the classified documents, necessitating a delay of trial. As a result, the district court entered another ends-of-justice continuance, which reset the trial date to July 25, 2022.

On July 11, 2022, however, the district court granted several of Murta's dispositive motions, including his motion to dismiss on statute of limitation grounds and his motion to suppress the statements he had made

---

[1] CIPA governs the disclosure, admissibility, and use of classified information in federal criminal cases. *See United States v. El-Mezain*, 664 F.3d 467, 519-525 (5th Cir. 2011).

during the 2018 interview in Lisbon. The Government appealed those decisions, and, following oral argument, another panel of this court reversed and remanded the case for further proceedings. *United States v. Rafoi*, 60 F.4th 982, 1007 (5th Cir. 2023) ("*Murta I*"). Following that remand, Murta filed renewed motions to dismiss on speedy trial grounds and to suppress on the theory that his statements during the same interview were involuntary. On May 16, 2023, the district court granted Murta's motion to suppress, and, on the following day, granted his motion to dismiss. The Government appeals, contending that the district court erred in (1) its dismissal of the indictment for violation of both the Speedy Trial Act and the Speedy Trial Clause of the Sixth Amendment, and (2) its grant of Murta's motion to suppress the statements he made during the 2018 pre-indictment interview in Lisbon.

## II. WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT A SPEEDY TRIAL ACT VIOLATION OCCURRED

Following remand, Murta renewed his motion to dismiss the indictment for violation of the Speedy Trial Act, arguing that more than seventy days of non-excludable delay had elapsed before the commencement of trial. The district court agreed, specifically finding that 141 days of non-excludable delay had elapsed from Murta's initial appearance to the original dismissal of the indictment. Central to that finding was the district court's conclusion that (1) twenty-nine days of non-excludable delay accrued between October 13, 2021, and November 10, 2021; and (2) the November 8, 2021 sua sponte ends-of-justice continuance order failed to toll the speedy trial clock "[b]ecause the requirements for excludable delay did not exist" at the time the order was entered, meaning that an additional fifty-nine days of non-excludable delay occurred between December 25, 2021, and February

21, 2022.[2] Consequently, the district court dismissed the indictment with prejudice.

On appeal, the Government contends that the district court made several errors in its calculation of non-excludable time. The Government first asserts—and Murta does not meaningfully dispute—that the district court failed to properly calculate the period of non-excludable delay between October 13, 2021, and November 10, 2021, because the parties' filing of pretrial motions during that time paused the speedy trial clock, pursuant to 18 U.S.C. § 3161(h)(1)(D). As the Government correctly observes, only twelve days of non-excludable delay elapsed during that period because the record reflects that pretrial motions were pending before the district court and paused the seventy-day clock until October 30.[3] The Government next argues that the district court erroneously failed to exclude the fifty-eight days between December 25, 2021, and February 21, 2022, because the November 8 continuance order tolled the speedy trial clock. Murta disagrees, contending that the November 8 continuance was invalid. Both parties agree, however, that the determination of whether a Speedy Trial Act violation occurred turns on the validity of the district court's November 8, 2021 sua sponte continuance order. If that continuance order failed to toll the speedy trial clock, then—as the Government concedes—a violation occurred and dismissal was proper. This is because, as both parties correctly note, fifty-eight additional days of non-excludable time accrued between December 25,

---

[2] The district court erroneously concluded that the period constituted fifty-nine days of excludable delay. But, as the Government ultimately argued before the district court, and now asserts on appeal, the correct calculation is fifty-eight days.

[3] Thus, the district court erred in failing to exclude the days from October 13, 2021, to October 29, 2021, but was correct in finding that the twelve days from October 30, 2021, to November 10, 2021, were non-excludable.

2021, and February 20, 2022, meaning that, as of February 20, 2022, seventy days of non-excludable time had elapsed before the commencement of trial.

"We review the district court's factual findings supporting its Speedy Trial Act ruling for clear error and its legal conclusions de novo." *United States v. Perry*, 35 F.4th 293, 351 (5th Cir. 2022) (quoting *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007)). "Factual findings are 'clearly erroneous only if, based on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.'" *United States v. Barry*, 978 F.3d 214, 217 (5th Cir. 2020) (quoting *United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014)). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)).

"The Speedy Trial Act of 1974 . . . requires that a criminal defendant's trial commence within 70 days after he is charged or makes an initial appearance, whichever is later, see [18 U.S.C.] § 3161(c)(1), and entitles him to dismissal of the charges if that deadline is not met, § 3162(a)(2)." *Bloate v. United States*, 559 U.S. 196, 198-99 (2010). The Speedy Trial Act exempts from the seventy-day clock:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A). Such "ends of justice" continuances only toll the Speedy Trial Act when "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and

the defendant in a speedy trial." *Id.* In making its balancing determination, the court "shall" consider a non-exhaustive list of factors, including:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel question of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> . . . .
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

*Id.* § 3161(h)(7)(B).

The Supreme Court has recognized that, "[a]lthough the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance . . . the Act is ambiguous on precisely when those findings must be 'se[t] forth, in the record of the case.'" *Zedner v. United States*, 547 U.S. 489, 506-07 (2006) (quoting § 3161(h)(7)(A)). In declining to resolve the ambiguity with a bright-line rule, the Court observed that "at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)," and noted that "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance."

*Id.* at 507 & n.7. "Much of the Act's flexibility is furnished by" the ends-of-justice provision, which "gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." *Id.* at 498-99. Nevertheless, ends-of-justice continuances are "not automatic" and require "specific findings" before they can toll the Speedy Trial clock. *Bloate*, 559 U.S. at 213. The "failure to make any express finding on the record cannot be harmless error." *United States v. Dignam*, 716 F.3d 915, 921 (5th Cir. 2013) (citing *Zedner*, 547 U.S. at 506-07). Although decided before *Zedner*, in *United States v. Bieganowski* we held that "[t]he only requirements for [an ends of justice continuance] are that the order memorializing the continuance indicate when the motion was granted, and that the reasons stated be and *can be fairly understood as being those that actually motivated the court at the time it granted the continuance*." 313 F.3d 264, 283 (5th Cir. 2002) (emphasis added).

Our review of the November 8, 2021 continuance order reveals that, on its face, it failed to provide reasons that "can be fairly understood as being those that actually motivated the court at the time it granted the continuance." *Id.* The order refers to and relies on "representations" contained in a non-existent motion to continue, purportedly filed by one of the parties. Additionally, the order states that "[t]he motion for continuance is therefore GRANTED." But the parties (as well as the court) concede that no such motion ever existed. The district court explained that this incongruity was the product of its own mistake when it ruled on Murta's renewed motion to dismiss:

> The Court misjudged the terms and tenue [sic] of the [covid continuance] Orders and did not make Scheduling Order adjustments. Moreover, while the Court included form exclusion language, suggesting that the basis for excludable delay existed, in fact, no basis was presented to the Court then or since. Because the requirements for excludable delay did not

exist at the time, the Court's Scheduling Order was unconstitutionally presumptuous. Hence, the Court's November 8, 2021, Order was ineffective in tolling the STA because of these failures.

The district court also conceded that neither party had made "representations" at the time of the continuance that would have justified the use of such language in the order. Given the plain language of the order, and the district court's express admission of error, we cannot and do not conclude that the justifications provided in the November continuance order "can be fairly understood as those that actually motivated the court at the time it granted the continuance." *Bieganowski*, 313 F.3d at 283; *see also United States v. Dent*, No. 21-60569, 2022 WL 3133864, at *2 (5th Cir. Aug. 5, 2022) (per curiam) (reversing defendant's conviction when Speedy Trial Act violation occurred in part because one of the district court's continuance orders "appear[ed] to have been entered in error" and thus failed to toll the seventy-day period).

Moreover, the record confirms that the district court did not clearly err in its factual conclusion that "the requirements for excludable delay did not exist at the time" the November continuance order was entered. At that time, trial was set for December 13, 2021, and the only pending motion was Murta's September 15, 2021 motion for review of the magistrate judge's detention order. Previously, on August 11, 2021, Murta had filed a motion to dismiss the indictment grounded on the statute of limitations and another for discovery and inspection. On August 30, 2021, the district court entered an order deferring consideration of the motion to dismiss until the close of discovery and also entered a separate order denying without prejudice Murta's motion for discovery and inspection. When the district court entered the November continuance order approximately a month before trial, neither party had filed additional discovery or dispositive motions.

No. 23-20276

Additionally, as of November 2021, neither party had moved for a continuance, *and* trial of the matter had been continued twice already because of the pandemic.[4] And, for his part, Murta had expressed his trial readiness as early as the August 23, 2021 pretrial conference. Notwithstanding the Government's arguments to the contrary, we are not "left with the definite and firm conviction that a mistake has been committed" by the district court's conclusion that the November continuance was unwarranted. *Barry*, 978 F.3d at 217.

The Government raises several challenges to the district court's refusal to exclude the period of delay resulting from its November 8, 2021 continuance. Each challenge is unavailing. The Government first contends that the November continuance order was facially valid because of its reference to the "miscarriage of justice" factor from 18 U.S.C. § 3161(h)(7)(B)(i), citing several cases where we have held that a disputed ends-of-justice continuance was valid. But the Government's argument is unpersuasive, as the cited cases involved continuance orders that (1) invariably complied with the procedural safeguards of § 3161(h)(7), and (2) were not entered by operation of the court's admitted mistake. *See, e.g.*, *United States v. Ayika*, 837 F.3d 460, 465 & n.4 (5th Cir. 2016) (involving multiple continuances requested by the defendant where the district court "expressly stated . . . [its] reasons for finding that the interests of justice outweighed the defendant's and the public's interests in a speedy trial"); *United States v. McNealy*, 625 F.3d 858, 862-63 & n.11 (5th Cir. 2010) (affirming district court's exclusion of time resulting from a continuance requested by the defendant who represented that his attorney would be

---

[4] *See COVID-19 Special Orders – Houston/Galveston Division*, U.S. Dist. & Bankr. Ct. of S.D. Tex., https://www.txs.uscourts.gov/page/covid-19-special-orders-houstongalveston-division (last visited Nov. 20, 2023).

absent due to National Guard training and thus required additional time to prepare for trial); *United States v. Whitfield*, 590 F.3d 325, 357 (5th Cir. 2009) (excluding time where district court made on-the-record finding that the case was "manifestly complex" and that it would be necessary for defendant's new attorneys to be given more time to prepare for trial); *United States v. Westbrook*, 119 F.3d 1176, 1188 (5th Cir. 1997) (affirming district court's exclusion of time resulting from a continuance where case-specific finding was made that additional time was necessary for defendants to procure transcripts in preparation for trial); *United States v. Madrid*, 610 F. App'x 359, 372 n.15 (5th Cir. 2015) (per curiam) (excluding time resulting from continuance where case-specific finding was made that the case was complex and involved voluminous discovery). We therefore reject the Government's contention that the November continuance order's mere recitation of the "miscarriage of justice" language from 18 U.S.C. § 3161(h)(7)(B)(i) sufficed to toll the speedy trial clock when the order on its face appears to have been entered mistakenly, and the district court itself conceded that it was entered in error. *See, e.g.*, *Bieganowski*, 313 F.3d at 283 (holding that a valid continuance order must provide reasons that "can be fairly understood as being those that actually motivated the court at the time it granted the continuance"); *Dent*, 2022 WL 3133864, at *2 (holding that the continuance order failed to toll the speedy trial clock when it "appear[ed] to have been entered in error").

The Government next asserts that, notwithstanding the miscarriage of justice factor, the district court separately found that "a continuance is necessary to allow reasonable time for trial preparation." That is an apparent reference to 18 U.S.C. § 3161(h)(7)(B)(iv), which permits an ends-of-justice continuance on the district court's determination that "the failure to grant a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking

into account the exercise of due diligence." We have held that § 3161(h)(7)(B)(iv) requires, as part of the ends-of-justice analysis, a consideration of whether counsel for the parties have exercised due diligence. *United States v. Blackwell*, 12 F.3d 44, 47-48 (5th Cir. 1994). Nowhere in the November continuance order does the district court even recite such statutory language, let alone state its consideration of the parties' exercise of due diligence. To the contrary, the district court later admitted that it simply included "form exclusion language" when it erroneously entered the November continuance order. The Government's argument thus fails on this point. *See id.* at 47 (holding that ends-of-justice continuance did not toll the speedy trial clock when "[t]he record in this case does not reflect that Defense Counsel's exercise of due diligence was considered by the trial court").

The Government also attempts to justify the continuance with post hoc rationalizations. This contention similarly misses the mark. The Government asserts that the district court's "assessment" that additional time was needed to prepare for trial "was eminently reasonable" because, "by December 2021, the government had produced 7.6 million pages of discovery to Murta." It further contends that "[t]he district court's assessment . . . proved accurate" because Murta ultimately filed multiple dispositive motions in February 2022. However, the district court's findings must be based exclusively on information available to it *at the time* the continuance was granted. *See Zedner*, 547 U.S. at 506 (observing that "the Act is clear that the findings must be made, if only in the judge's mind, *before* granting the continuance" (emphasis added)); *Bieganowski*, 313 F.3d at 283 (holding that "the reasons stated" must be those "that actually motivated the court at the time it granted the continuance"). The fact that a large amount of discovery was disclosed, or multiple dispositive motions were

No. 23-20276

filed, *after* the November continuance is irrelevant to determining whether the continuance tolled the speedy trial clock.[5]

Finally, the Government characterizes the district court's refusal to exclude the time resulting from the continuance as an "extraordinary and unprecedented decision" that, "in effect, retroactively vacated the November Continuance Order." The Government says that a district court's ability to rescind ends-of-justice continuance orders would jeopardize the Government's interest in relying on the permanence of court orders. The Government's contention on this point is unpersuasive for at least two reasons: (1) courts routinely review ends-of-justice continuances to determine whether such orders effectively tolled the speedy trial clock, and (2) the Government's argument presupposes that the November continuance was valid when entered.

First, both district and appellate courts necessarily determine whether ends-of-justice continuances were valid at the time they were entered. *See, e.g.*, *Dent*, 2022 WL 3133864, at *2 (reversing defendant's conviction when Speedy Trial Act violation occurred in part because one of the court's continuance orders "appear[ed] to have been entered in error" and thus failed to toll the 70-day period); *United States v. Clark*, 577 F.3d 273, 280 (5th Cir. 2009) (affirming district court's dismissal of the original indictment after the district court concluded that one of its continuance orders failed to toll

---

[5] Relatedly, the Government implies that Murta's failure to object to the November 8 continuance until February 2022 further justifies its tolling efficacy—a kind of waiver argument. But the Supreme Court has rejected such an interpretation, concluding that a defendant cannot waive the protections of the Speedy Trial Act since it would infringe on the public's coexistent interest in a speedy trial. *See Zedner*, 547 U.S. at 500-01 ("The purposes of the Act . . . cut against exclusion on the grounds of mere consent or waiver . . . . [T]he Act was designed with the public interest firmly in mind. That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely." (internal citation and quotation omitted)).

the speedy trial clock); *United States v. Jones*, 56 F.3d 581, 585 (5th Cir. 1995) ("In short, there is nothing in the record to justify a continuance . . . . [T]he indictment *should have been dismissed* on that basis." (emphasis added)). The Government's position here would effectively eliminate the district court's ability to retroactively review whether an ends-of-justice continuance order tolled the speedy trial clock. This would have the paradoxical and inefficient effect of forcing the district court to proceed to trial in a matter that might otherwise have been dismissed pursuant to the Speedy Trial Act, only to have the proceeding reversed on appeal. Notably, the Government offers no persuasive reason why we should deprive the district court of the first opportunity to consider the validity of its continuance order.

Second, the Government's framing of the issue presupposes the validity of the November continuance. For the reasons detailed above, we reject the Government's contention that the November continuance order was valid, so the Government's attempt to characterize the district court's decision as an unprecedented intrusion into litigants' interests in the permanence of valid court orders is unavailing.

We therefore conclude that the district court did not clearly err in its determination that the November continuance order failed to toll the speedy trial clock. Given the (1) twelve non-excludable days that accrued from October 30, 2021, to November 10, 2021; and (2) the fifty-eight non-excludable days that accrued from December 25, 2021, to February 20, 2022, a total of seventy non-excludable days had elapsed by February 20, 2022.[6] A Speedy Trial Act violation thus occurred, and the district court was bound to dismiss the indictment. *See* 18 U.S.C. § 3162(a)(2) (providing that the

---

[6] We do not consider the parties' arguments about the tolling effect of the March 2022 ends-of-justice continuance order, because we agree that resolution of the Speedy Trial Act issue turns on the validity of the November 2021 continuance.

indictment "shall be dismissed on motion of the defendant" should trial not commence within seventy days from the filing of the indictment or the defendant's initial appearance).

### III. WHETHER THE DISTRICT COURT ERRED IN DISMISSING THE INDICTMENT *WITH PREJUDICE*

Having determined that, although the district court erred in its total calculation of non-excludable days, that court was correct in its ultimate conclusion that a Speedy Trial Act violation occurred, we must next determine whether the court erred in dismissing the indictment with prejudice. "The decision whether to dismiss a complaint under the Speedy Trial Act with or without prejudice is entrusted to the sound discretion of the district judge and . . . no preference is accorded to either kind of dismissal." *United States v. Blevins*, 755 F.3d 312, 318 (5th Cir. 2014) (alteration omitted) (quoting *United States v. Blank*, 701 F.3d 1084, 1088 (5th Cir. 2012)). "When the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *United States v. Mancia-Perez*, 331 F.3d 464, 468 (5th Cir. 2003) (alteration omitted) (quoting *United States v. Taylor*, 487 U.S. 326, 327 (1988)). The statutory factors that the district court must consider in deciding whether to dismiss the indictment with or without prejudice are: (1) "the seriousness of the offense"; (2) "the facts and circumstances of the case which led to the dismissal"; and (3) "the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Our review will focus on the district court's evaluation of the first and third of those factors.

As for the first factor, the district court correctly observed that the offense was relatively serious, given the penalties imposed for violation of 18 U.S.C. § 1956—particularly, that a conviction could carry up to twenty years

of imprisonment. However, the court opined that "this factor is of little consequence since criminal charges are pending against Murta in Portugal." The court cited to no authority to support the conclusion that charges pending in another country militate the severity of the crime under U.S. law and, even if it did, the Government correctly points out that although "Portuguese authorities have a pending investigation . . . no charges have been filed against Murta in Portugal."[7] We therefore conclude that the district court failed to properly consider this statutory factor, and we decline to afford any deference to its conclusion on this point.

The third factor concerns the "impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." *Id.* § 3162(a)(2). This factor "encompasses three concerns: (1) the defendant's right to a timely trial; (2) the potential deterrent effect of a prejudicial dismissal on repeated violations of the Speedy Trial Act; and (3) the public's interest in bringing the defendant to trial." *Blank*, 701 F.3d at 1090. "Also implicated by this factor is the presence or absence of prejudice to the defendant." *Mancia-Perez*, 331 F.3d at 469.

In a similar manner to its faulty analysis of the first factor, the district court weighed this third factor in favor of dismissal with prejudice, in part because "the people of Portugal have [as great a] stake in determining whether Murta's conduct was of a criminal nature [as] the United States." Again—just as with its evaluation of the first factor—the district court cited to no authority to support its conclusion that the interests of foreign citizens in prosecuting Murta supplant the interests of the American public in seeing him brought to trial in the United States. And, although that court did

---

[7] At oral argument, counsel for the defendant conceded that nothing in the record demonstrates that Murta faced pending charges in Portugal.

evaluate the prejudice to Murta resulting from the Speedy Trial Act violation as it relates to his mental and physical health, it failed to consider "the most serious type of prejudice, *i.e.*, the possibility that [the] defense was impaired by the substantial delay experienced in this case." *Blank*, 701 F.3d at 1090. Because the statutory factors were thus not properly considered, reversal is warranted and remand is appropriate for proper application of the test outlined in § 3162(a)(2).

## IV. WHETHER THE DISTRICT COURT ERRED IN DISMISSING THE INDICTMENT PURSUANT TO THE SIXTH AMENDMENT AND RULE 48(B) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

In its order that was made the subject of this appeal, the district court concluded that, in addition to the Speedy Trial Act violation, the Speedy Trial Clause of the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure were "independent bas[es] for dismissing th[e] case against [Murta] with prejudice." We briefly address why the district court erred in so concluding.

The Sixth Amendment to the United States Constitution states that "the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. "While 'the ordinary procedures for criminal prosecution are designed to move at a deliberate pace,' the 'right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances.'" *United States v. Duran-Gomez*, 984 F.3d 366, 373 (5th Cir. 2020) (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)). The determination whether a Speedy Trial Clause violation occurred is made through application of the *Barker* factors.[8] *See Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008). Likewise, "[t]he appropriate analysis under

---

[8] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[Rule 48(b)] requires the application of the *Barker* factors." *United States v. Harrison*, 918 F.2d 469, 474 (5th Cir. 1990). The *Barker* factors are: "(1) length of delay, (2) reason for delay, (3) the defendant's diligence in asserting the right, and (4) prejudice to the defendant." *Duran-Gomez*, 984 F.3d at 373. The district court's application of the *Barker* factors is reviewed de novo and its factual determinations concerning the speedy trial right are reviewed for clear error. *Id.*

The first factor "functions as a triggering mechanism," and is satisfied "if the trial has been delayed for at least one year." *See id.* at 374. The parties do not dispute that it was so delayed. The second factor, the reason for the delay, examines "whether the government or the criminal defendant is more to blame." *Id.* (quoting *Vermont v. Brillon*, 556 U.S. 81, 91 (2009)). The district court weighed this factor against the Government. The Government concedes that "the length of delay here was about four years," but insists that the bulk of the delay resulted from (1) Murta's own efforts to resist extradition and (2) the time that elapsed during the Government's successful first appeal.

We agree. Nearly half of the time constituting the four-year delay resulted from Murta's extradition fight, which should not be held against the Government. *See United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995) ("[The defendant] cannot avoid a speedy trial by forcing the government to run the gauntlet of obtaining formal extradition and then complain about the delay that he has caused by refusing to return voluntarily to the United States."). Additionally, seven months of that delay are attributable to the Government's successful first appeal, which likewise should not be held against the Government. *See United States v. Frye*, 489 F.3d 201, 211 (5th Cir. 2007) ("Because it was an important issue on which the government prevailed, we do not find that the government's interlocutory appeal was unreasonable, and, therefore, we do not weigh the period of the interlocutory

appeal against the government."). Only four months of that delay resulted from the Government's request for a trial continuance—the March 2022 continuance—which is comparatively slight.[9] The district court thus erred when it weighed this factor heavily in favor of Murta.

The third factor is the defendant's diligence in asserting his or her speedy trial right. The "assertion of that right is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial. At the very least, a defendant's assertion of his speedy trial rights should manifest 'his desire to be tried promptly.'" *Id.* at 211-12 (quoting *United States v. Litton Sys., Inc.*, 722 F.2d 264, 271 (5th Cir. 1984)). Here, the district court weighed this factor in favor of Murta after concluding that Murta repeatedly asserted his speedy trial right during pretrial proceedings. Critically, however, the district court failed to consider Murta's two-year extradition fight in its evaluation of this factor—conduct that we have held weighs against the defendant. *See United States v. Ansari*, 48 F.4th 393, 400 (5th Cir. 2022). We therefore conclude that the district court erred in weighing this factor as well. When balancing Murta's protracted efforts to

---

[9] The district court found that the March 2022 continuance, in which the Government alerted the court to a discovery issue involving CIPA, was the product of "intentional bad-faith delay." Thus, the district court held that the second *Barker* factor "weigh[ed] heavily in Murta's favor." But neither the district court nor Murta point to any deliberate conduct that convinces us to make an inference of bad faith on the part of the Government. *See Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994) ("There has been no showing that the state intentionally delayed the proceedings in this case."). The record, including the Government's explanation of the events leading up to the March 2022 continuance, indicates that, at most, the Government was negligent in its raising of the CIPA issue. Delays as a result of the Government's negligence, however, weigh only slightly in favor of dismissal. *See id.* ("Unexplained or negligent delay is weighed against the state, but not heavily."). The district court's evaluation of this factor was therefore flawed, and, at most, it should have balanced the factor only slightly in favor of dismissal.

resist extradition against his repeated pre-trial assertions of the speedy trial right, this factor should at least be weighed neutrally.

Finally, we consider the prejudice to the defendant. "The burden is ordinarily on the defendant to demonstrate actual prejudice." *Duran-Gomez*, 984 F.3d at 379. "'Actual prejudice' is assessed in light of the three following interests of the defendant: (1) 'to prevent oppressive pretrial incarceration;' (2) 'to minimize anxiety and concern of the accused;' and (3) 'to limit the possibility that the defense will be impaired.'" *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (quoting *Barker*, 407 U.S. at 532). The impairment of the defense is considered the "most serious of the three types of prejudice." *Frye*, 489 F.3d at 212 (citing *Barker*, 407 U.S. at 532). Here, the district court focused on the length of Murta's pretrial incarceration, Murta's health concerns, and the fact that he was confined outside of his home country. Notably, the district court made no determination whether Murta's defense was impaired by those circumstances. When considering that the second and third *Barker* factors weigh, respectively, slightly in favor of dismissal and neutrally, the district court's findings of prejudice here do not convince us that, on balance, a Sixth Amendment violation occurred. And, because the same *Barker* factors govern the district court's dismissal of the indictment based on Rule 48(b), the same conclusion applies. *See Harrison*, 918 F.2d at 474. Therefore, the district court's judgment as to the Speedy Trial Clause and Rule 48(b) must be reversed.[10]

---

[10] Given the history of this case and some findings by the district judge not discussed herein, we exercise our discretion by ordering reassignment of this case to a different district judge on remand. *See Miller v. Sam Hous. State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021); *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 763-64 (D.C. Cir. 2014). Further, because we affirm the district court's dismissal of the indictment pursuant to the Speedy Trial Act but remand and order that this case be reassigned to another district judge to evaluate whether the dismissal should be with or without prejudice, we express no opinion as to whether the district court erred in granting Murta's motion to suppress. This

No. 23-20276

## V. CONCLUSION

We AFFIRM the district court's dismissal of the indictment pursuant to the Speedy Trial Act, REVERSE the district court's dismissal of the indictment with prejudice pursuant to the Speedy Trial Act, REVERSE the district court's dismissal of the indictment pursuant to the Speedy Trial Clause of the Sixth Amendment and Rule 48(b) of the Federal Rules of Criminal Procedure, VACATE the district court's granting of the motion to suppress, and REMAND for further proceedings consistent with this opinion. We further direct the Chief Judge of the Southern District of Texas to REASSIGN this case to another district judge for further proceedings on remand.

---

is so that, on remand, the district court may decide whether dismissal of the indictment with prejudice is proper, thus terminating the case and mooting Murta's suppression motion. On the other hand, the district court could decide on remand that dismissal without prejudice is proper, paving the way for the Government to refile charges against Murta. But the issues raised in Murta's suppression motion will only become live again if the Government has both the ability and the desire to refile charges. Given the multiple outstanding contingencies on remand, resolution of Murta's suppression motion would not involve a concrete legal issue and would be merely advisory. *See Am. Stewards of Liberty v. Dep't of Interior*, 960 F.3d 223, 228-29 (5th Cir. 2020). We nevertheless vacate the district court's order granting Murta's motion to suppress so that, if necessary on remand, Murta could again file another suppression motion for the district court to determine in the first instance.